**EDELSBERG LAW, P.A.**
Scott Edelsberg, Esq. (CA Bar No. 330990)
1925 Century Park E #1700
Los Angeles, CA 90067
Telephone: 305-975-3320
scott@edelsberglaw.com

*Counsel for Plaintiff and Proposed Class*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

REBECKA MILLER, individually and on behalf of all others similarly situated,

Plaintiff,

vs.

DIRECT GENERAL INSURANCE AGENCY, INC. D/B/A DIRECT AUTO INSURANCE

Defendant.

Case No. 2:26-cv-01480-MWC-SSC

**CLASS ACTION**

**FIRST AMENDED COMPLAINT FOR VIOLATIONS OF THE TELEPHONE SOLICITATION ACT 47 U.S.C. § 227, ET SEQ. (TCPA)**[1]

**JURY TRIAL DEMANDED**

[1] Amended as a matter of course pursuant to Federal Rule of Civil Procedure 15(a)(1)(B). A redline version reflecting the amendments to the pleading is attached as **Exhibit A**.

1. Plaintiff, Rebecka Miller ("Plaintiff"), brings this action against Defendant, Direct General Insurance Agency, Inc. d/b/a Direct Auto Insurance ("Defendant"), to secure redress for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

## NATURE OF THE ACTION

2. This is a putative class action pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq., (the "TCPA").

3. This case arises from Defendant's transmission of multiple unauthorized text messages[2] to cellular telephones and violations of the National Do Not Call Registry of Plaintiff and others, without regard to consumers' consent or privacy rights.

4. Defendant is an insurance agency company engaged in the sale of automobile and life insurance products to consumers, throughout the United States including the State of California.

5. To promote its services, Defendant engages in aggressive unsolicited telemarketing, harming thousands of consumers in the process. Defendant utilizes aggressive marketing to push its products and services without regards to consumers' rights under the TCPA.

6. Through this action, Plaintiff seeks injunctive relief to halt Defendant's illegal conduct, which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the daily life of thousands of individuals. Plaintiff also seeks statutory damages on behalf of herself and members of the class, and any other available legal or equitable remedies.

---

[2] "There is no question as to whether text messages are calls under the TCPA in this Circuit. Although [Defendant's] counsel seems determined to ignore it, settled law from the Ninth Circuit Court of Appeals establishes that a TCPA violation may arise from unsolicited text messages." *D'Agostino v. Circle K Stores Inc.*, No. CV-26-01225-PHX-JAT, 2026 U.S. Dist. LEXIS 89449, at *13-14 (D. Ariz. Apr. 22, 2026).

## JURISDICTION AND VENUE

7. Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute. Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiff alleges a national class, which will result in at least one class member belonging to a different state than that of Defendant. Plaintiff seeks up to $1,500.00 (one-thousand-five-hundred dollars) in damages for each call in violation of the TCPA, which, when aggregated among a proposed class numbering in the tens of thousands, or more, exceeds the $5,000,000.00 (five-million dollars) threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA"). Therefore, both the elements of diversity jurisdiction and CAFA jurisdiction are present.

8. Venue is proper in the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1391 (b) because Plaintiff resides within this district, (c) Defendant is deemed to reside in any judicial district in which it is subject to the court's personal jurisdiction, and because Defendant provides and markets its services within this district thereby establishing sufficient contacts to subject it to personal jurisdiction. Further, Defendant's tortious conduct against Plaintiff occurred within the Central District of California and, on information and belief, Defendant has sent the same telemarketing text messages complained of by Plaintiff to other individuals within this judicial district, such that some of Defendant's acts in making such calls have occurred within this district, subjecting Defendant to jurisdiction in the Central District of California.

## PARTIES

9. Plaintiff is a natural person who, at all times relevant to this action, was a resident of Los Angeles County, California.

10. Plaintiff is, and at all times relevant hereto was, an individual and the sole subscriber of the residential telephone number ending in 0530 (the "0530 Number") that received Defendant's text message solicitations.

11. Defendant is a North Carolina corporation with its principal place of business located at 450 W. Hanes Mill Road, STE 101, Winston-Salem, NC 27105-1312.

12. Defendant directs, markets, and provides its business activities throughout the United States, including the State of California.

13. Unless otherwise indicated, the use of Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, vendors, and insurers of Defendant.

## FACTUAL ALLEGATIONS

14. Defendant is an insurance company engaged that sells automobile insurance products to consumers throughout the United States, including the State of California.

15. Beginning at least on or about November 2025, Defendant sent or caused to be sent multiple telemarketing text messages to Plaintiff's 0530 Number. Including but not limited, Defendant sent telemarketing text messages to Plaintiff on November 20, 2025, November 21, 2025, November 24, 2025, November 25, 2025, November 26, 2025, and November 28, 2025, as shown below:


4:24
99
+1 (833) 535-3394
Text Message • SMS
Thu, Nov 20 at 11:46 AM
Hi, REBECKA! Your temporary auto insurance with NGIC for your 20 Terrain ends on 12/19/25. Direct Auto Insurance, an Allstate brand, could save you up to 25% on 6 or 12 months of coverage today. Call 877-891-5550 or tap to quote: https://nxt.to/C2Xu1yK.
Reply STOP to unsubscribe.
Text Message • SMS


4:24
99
+1 (833) 535-3394
Fri, Nov 21 at 11:45 AM
Hi, REBECKA! Your temporary auto insurance with NGIC for your 20 Terrain ends on 12/19/25. Direct Auto Insurance, an Allstate brand, could save you up to 25% on 6 or 12 months of coverage today. Call 877-891-5550 or tap to quote: https://nxt.to/Gfvmqgf.
Reply STOP to unsubscribe.
Text Message • SMS


4:24
5G
48
99
+1 (833) 535-3394
unsubscribe.
Mon, Nov 24 at 11:45 AM
Hi, REBECKA! Your temporary auto insurance with NGIC for your 20 Terrain ends on 12/19/25. Direct Auto Insurance, an Allstate brand, could save you up to 25% on 6 or 12 months of coverage today. Call 877-891-5550 or tap to quote: https://nxt.to/zAKAoa6.
Reply STOP to unsubscribe.
Text Message • SMS


4:23
5G
48
99
+1 (833) 535-3394
unsubscribe.
Tue, Nov 25 at 11:45 AM
Hi, REBECKA! Your temporary auto insurance with NGIC for your 20 Terrain ends on 12/19/25. Direct Auto Insurance, an Allstate brand, could save you up to 25% on 6 or 12 months of coverage today. Call 877-891-5550 or tap to quote: https://nxt.to/3z8NYK1.
Reply STOP to unsubscribe.
Text Message • SMS







16. The telephone number identified in the messages is Defendant's number and is answered by employees of Defendant when called.

17. The hyperlinks in the messages are links to Defendant's website.[3]

[3] By way of example, the hyperlink in Defendant's November 26, 2025 message, http://nxt.to/Zbf8oLw, redirects consumers to Defendant's Auto Insurance

18. The text messages at issue were sent as part of a coordinated lead-conversion campaign designed to convert consumers who had received temporary point-of-sale insurance coverage into customers for Defendant's insurance products.

19. The content of the text messages promoted Defendant's insurance products and, as alleged above, included Defendant's telephone number and a link to Defendant's website where Defendant sells its insurance products.

20. The text messages promoted Defendant and directed consumers to obtain insurance coverage from Defendant.

21. To the extent the text messages were not diretly sent by Defendant, Defendant authorized an outside vendor to transmit the text messages to consumers whose temporary point-of-sale automobile insurance coverage was nearing expiration.

22. Defendant provided, approved, supplied, and controlled the material content of the text messages, including the use of the Direct Auto Insurance name, the Allstate-brand reference, the "save up to 25%" promotional language, the quote call-to-action, and the destination links and telephone number.

23. Defendant had the right to control the manner and means of the campaign because the campaign used Defendant's brand, advertised Defendant's insurance products, routed consumers to Defendant's website, used Direct Auto promotional language, and depended on Defendant's ultimate authority to accept, process, quote, and sell the advertised insurance products.

24. Defendant also had the right to give interim instructions to the outside vendor concerning the campaign, including instructions concerning which consumers would be contacted, when they would be contacted in relation to the expiration of their temporary coverage, what promotional language would be used, what links or telephone numbers would be included, how opt-outs would be processed, whether the campaign

---

homepage, https://www.directauto.com/?CID=OTC-DNSR-DR-120501&att=drct.auto (last accessed April 28, 2026).

would continue, pause, or stop, and the parameters for the consumer leads that would ultimately be accepted by Defendant.

25. To the extent an outside vendor and not Defendant physically transmitted the text messages, that entity acted with actual authority from Defendant because it sent Direct Auto-branded marketing messages for the purpose of generating insurance quotes and sales for Defendant's benefit at the direction and under the control of Defendant.

26. Defendant also ratified the conduct of the transmitting vendor by knowingly accepting the benefits of the campaign, including lead generation, quote traffic, consumer inquiries, policy applications, and insurance sales.

27. Defendant was aware and authorized the tranmission of the above referenced text messages.

28. Defendant could have investigated, supervised, suspended, modified, or terminated the campaign, but instead accepted the benefits of the campaign and allowed the transmitting vendor to continue sending Direct Auto-branded text messages.

29. Defendant's text messages were transmitted to Plaintiff's cellular telephone, and within the time frame relevant to this action.

30. Defendant's text messages constitute telemarketing because they encouraged the future purchase or investment in Defendant's property, goods, or services, i.e., Defendant's insurance products.

31. Defendant sent or caused to be sent the subject texts within this judicial district and, therefore, Defendant's violation of the TCPA occurred within this district. Upon information and belief, Defendant caused other text messages to be sent to individuals residing within this judicial district.

32. Defendant's texts were not made for an emergency purpose or to collect on a debt pursuant to 47 U.S.C. § 227(b)(1)(B).

33. Plaintiff has never had a business relationship with Defendant.

34. At no point in time did Plaintiff provide anyone with express consent to be contacted by Defendant, regarding Defendant's insurance products, or by any outside vendor on Defendant's behalf regarding Defendant's insurance products.

35. Plaintiff is the subscriber and sole user of the 0530 Number and is financially responsible for it.

36. Plaintiff's 0530 Number is her residential telephone number used for personal purposes. Plaintiff's 0530 Number is her primary way of being contacted in her home.

37. Plaintiff registered her 0530 Number with the national do-not-call registry on April 15, 2025 and has been registered at all times relevant to this action.

38. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

39. Defendant sought a financial benefit from the telemarketing text messages it placed to Plaintiff and the putative class members, as it attempted to derive business from these messages.

40. Defendant's unsolicited text messages caused Plaintiff actual harm, including invasion of her privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion. Defendant's text messages also inconvenienced Plaintiff and caused disruption to her daily life.

## CLASS ALLEGATIONS

### PROPOSED CLASS

41. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of herself and all others similarly situated.

42. Plaintiff brings this case on behalf of the class defined as follows:

> **<u>Do Not Call Registry Class</u>: All persons in the United States who from four years prior to the filing of this action (1) were sent a text message more than one time within any 12-month period; (2) where the person's telephone number had been listed on the National Do Not Call Registry for more than thirty days; (3) regarding Defendant's insurance products.**

43. Defendant and its employees or agents are excluded from the class.

**<u>Numerosity</u>**

44. Through pre-suit investigation, Plaintiff is informed and believes that there are more than 50 individuals that fall within the Class definition. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

45. Identification of the Class members is a matter capable of ministerial determination from Defendant's text message records.

**<u>Common Questions of Law and Fact</u>**

46. There are numerous questions of law and fact common to the class which predominate over any questions affecting only individual members of the class. Among the questions of law and fact common to the class are:

a. Whether Defendant violated the TCPA;

b. Whether Defendant's conduct was knowing and willful;

c. Whether Defendant violated the privacy rights of Plaintiff and members of the class;

d. Whether Defendant is liable for damages, and the amount of such damages; and

e. Whether Defendant should be enjoined from such conduct in the future.

47. The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendant routinely transmits text messages to telephone numbers assigned to cellular telephone services is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

**Typicality**

48. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

**Protecting the Interests of the Class Members**

49. Plaintiff is a representative who will fully and adequately assert and protect the interests of the class and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the class.

**Proceeding Via Class Action is Superior and Advisable**

50. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all members of the class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the class are in the millions of dollars, the individual damages incurred by each member of the class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

51. The prosecution of separate actions by members of the class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be

dispositive of the interests of the class, although certain class members are not parties to such actions.

**COUNT I**
**Violation of the TCPA 47 U.S.C. § 227(c)**
**(On Behalf of the Plaintiff and the Do Not Call Registry Class)**

52. Plaintiff repeats and re-alleges paragraphs 1 through 51 of this Complaint and incorporates them by reference herein.

53. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

54. 47 C.F.R. § 64.1200(e), provides that § 64.1200(c) is "applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."[4]

55. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

56. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

---

[4] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003) Available at https://apps.fcc.gov/edocs_public/attachmatch/FCC-03-153A1.pdf

57. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the class, prays for the following relief:

a. An order certifying this case as a class action on behalf of the class as defined above, and appointing Plaintiff as the representative of the class and Plaintiff's counsel as Class Counsel;

b. A declaration that Defendant's practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227;

c. An injunction requiring Defendant to cease all text message solicitations to numbers on the Do Not Call Registry, and to otherwise protect the interests of the class;

d. An award of actual and statutory damages for Plaintiff and each member of the class;

e. Such further and other relief as the Court deems necessary.

## JURY DEMAND

Plaintiff and Class Members hereby demand a trial by jury.

Dated: April 28, 2026

Respectfully submitted,

By: _/s/ *Scott Edelsberg*_

**EDELSBERG LAW, P.A.**
Scott Edelsberg, Esq. (CA Bar No. 330990)
1925 Century Park E #1700
Los Angeles, CA 90067
Telephone: 305-975-3320
scott@edelsberglaw.com

*Counsel for Plaintiff and the Proposed Class*