**EDELSBERG LAW, P.A.**
Scott Edelsberg, Esq. (CA Bar No. 330990)
1925 Century Park E #1700
Los Angeles, CA 90067
Telephone: 305-975-3320
scott@edelsberglaw.com
*Counsel for Plaintiff and Proposed Class*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| REBECKA MILLER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>S. BROWN & ASSOCIATES, INC.,<br><br>Defendant. | Case No. 2:26-cv-01480-MWC-SSC<br><br>CLASS ACTION<br><br>SECOND AMENDED COMPLAINT FOR VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT 47 U.S.C. § 227, ET SEQ. (TCPA)[1]<br><br>JURY TRIAL DEMANDED |

[1] Amended pursuant to the Court's Order, [ECF No. 37]. Through this amendment, Plaintiff drops, without prejudice to later naming, Direct General Insurance Agency, Inc. *See Wilens v. Automattic, Inc.,* No. C 14-02419 LB, 2015 U.S. Dist. LEXIS 14054, at *6 (N.D. Cal. Feb. 5, 2015). A redline version of the amended pleading is attached as **Exhibit A**.

1. Plaintiff, Rebecka Miller ("Plaintiff"), brings this action against Defendant, S. Brown & Associates, Inc. ("Defendant" or "SBA"), to secure redress for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

## NATURE OF THE ACTION

2. This is a putative class action pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. (the "TCPA").

3. This case arises from Defendant's transmission and initiation of multiple unauthorized telemarketing text messages to residential cellular telephones registered on the National Do Not Call Registry.

4. Defendant is an insurance administrator that provides point-of-sale automobile insurance programs to auto dealerships throughout the United States, including the State of California.

5. To promote the insurance products it administers, Defendant engages in unsolicited text messaging with no regard for the National Do Not Call Registry and in violation of the TCPA.

6. Through this action, Plaintiff seeks statutory damages on behalf of herself and members of the class, and any other available legal or equitable remedies.

## JURISDICTION AND VENUE

7. Jurisdiction is proper under 28 U.S.C. § 1331 because Plaintiff alleges violations of a federal statute.

8. This Court has personal jurisdiction over Defendant because Defendant directs, markets, and provides its business activities throughout the State of California, through its point-of-sale insurance program, dealership-facing website portals, producer network, and text message solicitation activities. Moreover, Defendant transmitted the subject text messages into the State of California and to Plaintiff's cellular telephone number which has an area code (909) associated with

geographic locations in California. Thus, Defendant knew that its tortious conduct was being directed at California and that it would result in harm to Plaintiff in California.

9. Venue is proper in the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1391(b) because Plaintiff resides in this District, Defendant directed the challenged text messages to Plaintiff in this District, Defendant's tortious conduct occurred in this District, and, on information and belief, Defendant sent or caused substantially similar text message solicitations to other individuals in this District.

## PARTIES

10. Plaintiff is a natural person who, at all times relevant to this action, was a resident of Los Angeles County, California.

11. Plaintiff is, and at all relevant times was, the sole subscriber and user of the residential cellular telephone number ending in 0530 (the "0530 Number") that received Defendant's text message solicitations.

12. Defendant is a corporation with its principal place of business located at 150 River Road, M3, Montville, New Jersey 07045.

## FACTS

13. Defendant is a privately owned insurance administrator located in New Jersey that provides "Point of Sale Insurance" to automobile dealerships. Defendant's public materials market the program as "America's #1 Point of Sale Insurance Program" and an "Exclusive Auto Dealer Spot Insurance" program designed to facilitate vehicle sales.

14. Defendant's Point of Sale Insurance program is designed for automobile dealers and enables a dealership to provide a customer with proof of full coverage insurance so the customer may take delivery of a newly purchased vehicle when the customer cannot provide acceptable proof of coverage.

15. Defendant operates and administers the program through its website, www.sba4u.com, including a dealer-facing portal through which dealerships submit enrollment forms, bind temporary coverage, and print customer insurance binders and declaration pages.

16. Defendant's Producer Manual states that the program is insured by National General Insurance Company ("NGIC") and that Defendant is the Program Administrator for NGIC.

17. Defendant's program materials represent that after a dealer uses the program for a customer, the customer is contacted and offered continuous coverage. Thus, Defendant's program contemplates follow-up contact to customers upon expiration of the temporary point-of-sale coverage administered by Defendant.

18. Because Defendant receives the customer information associated with the temporary insurance placed by the dealership, Defendant possesses or controls the information necessary to identify customers with temporary NGIC coverage, the vehicles covered, the coverage terms, and the dates on which the temporary coverage will end.

19. Defendant acquires consumer information from dealerships that use Defendant's point-of-sale program, including, customer names, addresses, telephone numbers, vehicle information, coverage information, binder information, and the dates on which temporary coverage is scheduled to expire.

20. Plaintiff purchased a GMC Terrain from an automobile dealership. In connection with that transaction, the dealership placed temporary point-of-sale auto insurance coverage with NGIC through the program administered by Defendant.

21. Defendant acquired Plaintiff's personal and insurance coverage information from the dealership and/or the enrollment records for the temporary NGIC point-of-sale coverage. Plaintiff did not provide her telephone number

directly to Defendant for marketing purposes, did not request a quote from Defendant, and did not ask Defendant to contact her by text message.

22. Before Plaintiff's temporary point-of-sale coverage ended, and while Defendant's records reflected that the temporary coverage was nearing expiration, Defendant began to send Plaintiff text message solicitations for the purpose of converting Plaintiff from temporary point-of-sale coverage into a longer-term automobile insurance policy.

23. Specifically, beginning at least on or about November 20, 2025, Defendant sent multiple telemarketing text messages to Plaintiff's 0530 Number, including on November 20, 2025, November 21, 2025, November 24, 2025, November 25, 2025, November 26, 2025, and November 28, 2025, as shown below:







4:24
99
+1 (833) 535-3394
unsubscribe.
Mon, Nov 24 at 11:45 AM
Hi, REBECKA! Your temporary auto insurance with NGIC for your 20 Terrain ends on 12/19/25. Direct Auto Insurance, an Allstate brand, could save you up to 25% on 6 or 12 months of coverage today. Call 877-891-5550 or tap to quote: https://nxt.to/zAKAoa6.
Reply STOP to unsubscribe.
Text Message • SMS


4:23
99
+1 (833) 535-3394
unsubscribe.
Tue, Nov 25 at 11:45 AM
Hi, REBECKA! Your temporary auto insurance with NGIC for your 20 Terrain ends on 12/19/25. Direct Auto Insurance, an Allstate brand, could save you up to 25% on 6 or 12 months of coverage today. Call 877-891-5550 or tap to quote: https://nxt.to/3z8NYK1.
Reply STOP to unsubscribe.
Text Message • SMS







24. Each text message was transmitted from the same telephone number, (833) 535-3394, a number owned, leased, controlled, and/or used by Defendant.

25. The content of the text messages demonstrates that Defendant sent them. Each message identified Plaintiff by name, referred to Plaintiff's "temporary auto insurance with NGIC," identified Plaintiff's vehicle as a "20 Terrain," stated that the temporary NGIC coverage "ends on 12/19/25," and attempted to sell Plaintiff 6- or 12-month automobile insurance coverage.

26. Each message also directed Plaintiff to call 877-891-5550 or tap a unique quote link, and each message included a "Reply STOP to unsubscribe"

instruction. These features confirm that the messages were part of a commercial text message campaign rather than an isolated informational notice.

27. The information contained within the text messages is the same categories of information that only Defendant receives and maintains through its point-of-sale program: the customer's identity, the specific vehicle sold, the temporary NGIC coverage, and the expiration date of the temporary binder. Only Defendant and the originating dealership have access to this information.

28. The messages' reference to "temporary auto insurance with NGIC" is a direct reference to the insurance program that Defendant administers.

29. The messages were also timed to Plaintiff's temporary coverage; again, information that only Defendant is privy to. They began approximately one month before the stated December 19, 2025 end date and were repeated on consecutive or near-consecutive business days at approximately the same time of day, consistent with an automated follow-up campaign – also known as a "drip" campaign – triggered by Defendant's temporary coverage records.

30. Direct Auto Insurance, the company whose permanent insurance products were advertised in the messages, through its counsel, also confirmed to Plaintiff's counsel that the messages were sent by Defendant.

31. Defendant selected Plaintiff and class members for the text message campaign because Defendant's point-of-sale records showed that their temporary NGIC coverage was approaching expiration. The purpose of Defendant's text messages was to sell Plaintiff and class members longer-term automobile insurance products for their vehicles.

32. The repeated nature and uniform content of the messages confirm that they were part of a mass marketing campaign, not a random or isolated communication.

33. The messages constituted telemarketing and telephone solicitations because they encouraged Plaintiff to purchase or invest in automobile insurance coverage. The messages were not informational notices; they were solicitations for new insurance coverage.

34. Defendant sought a financial benefit from the text message campaign by converting consumers with expiring temporary point-of-sale coverage into purchasers of automobile insurance coverage.

35. Plaintiff did not have an established business relationship with Defendant. Plaintiff did not purchase goods or services from Defendant, did not apply to Defendant for insurance, did not request a quote from Defendant, did not visit Defendant's website, did not contact Defendant, and did not ask Defendant to provide continuous coverage.

36. Plaintiff did not give Defendant prior express invitation or permission to send telemarketing text messages to the 0530 Number. Plaintiff also did not provide Defendant with prior express consent to contact her by text message for marketing purposes.

37. Like Plaintiff, the Class Members did not have an established business relationship with Defendant, did not purchase goods or services from Defendant, did not apply to Defendant for insurance, did not request a quote from Defendant, did not visit Defendant's website, did not contact Defendant, and did not ask Defendant to provide continuous coverage.

38. Instead, Defendant unilaterally acquired their information and telephone numbers, just as it did for Plaintiff, from the dealerships where the Class Members purchased their vehicles.

39. The messages were not sent for an emergency purpose, were not sent to collect a debt, were not sent by or on behalf of a tax-exempt nonprofit organization, and were not sent in response to any request by Plaintiff.

40. Plaintiff is the subscriber and sole user of the 0530 Number and is financially responsible for it.

41. Plaintiff's 0530 Number is her residential telephone number used for personal purposes. Plaintiff's 0530 Number is her primary way of being contacted in her home.

42. Plaintiff registered her 0530 Number with the National Do Not Call Registry on April 15, 2025, and it has been registered at all times relevant to this action.

43. Defendant sent the subject text messages within this judicial district because Plaintiff received the messages while residing in this District. On information and belief, Defendant sent or caused substantially similar text message solicitations to other individuals residing within this District and throughout the United States.

44. Defendant's unsolicited text messages caused Plaintiff actual harm, including invasion of privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion. Defendant's text messages also inconvenienced Plaintiff and disrupted her daily life.

## CLASS ALLEGATIONS

**Proposed Class**

45. Plaintiff brings this case as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of herself and all others similarly situated.

46. Plaintiff brings this case on behalf of the class defined as follows:

> **Do Not Call Registry Class**: All persons in the United States who from four years prior to the filing of this action (1) were sent a text message by Defendant; (2) more than one time within any 12-month period; (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days; (4) regarding

> the availability of automobile insurance products or services in connection with the expiration or approaching expiration of temporary point-of-sale automobile insurance coverage administered by Defendant.

47. Defendant and its employees, officers, directors, and agents are excluded from the Class.

**Numerosity**

48. Through pre-suit investigation, Plaintiff is informed and believes that there are more than 50 individuals who fall within the Class definition. The members of the Class are therefore so numerous that joinder of all members is impracticable.

49. Identification of Class members is capable of ministerial determination from Defendant's text message records, Program records, binder records, opt-out records, sending-number records, and messaging-platform data.

**Common Questions of Law and Fact**

50. There are numerous questions of law and fact common to the Class that predominate over any questions affecting only individual members of the Class. Among the common questions are:

a. The total number of text messages sent to Plaintiff and the Class Members by Defendant;

b. Whether the text messages constituted telephone solicitations or telemarketing;

c. Whether Class members' telephone numbers were listed on the National Do Not Call Registry for more than thirty days before the messages;

d. Whether Defendant violated the TCPA;

e. Whether Defendant's conduct was knowing and willful;

f. Whether Defendant is liable for statutory damages, and the amount of such damages; and

g. Whether Defendant should be enjoined from such conduct in the future.

51. The common questions in this case are capable of common answers. If Plaintiff's claim that Defendant routinely sent or caused substantially similar text messages to telephone numbers listed on the National Do Not Call Registry is accurate, Plaintiff and Class members will have identical claims capable of efficient adjudication and administration in this case.

**Typicality**

52. Plaintiff's claims are typical of the claims of Class members because they arise from the same text message campaign and are based on the same factual and legal theories.

**Protecting the Interests of the Class Members**

53. Plaintiff will fully and adequately assert and protect the interests of the Class and has retained competent counsel experienced in class actions and TCPA litigation. Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

**Proceeding Via Class Action is Superior and Advisable**

54. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all Class members is economically unfeasible and procedurally impracticable. While aggregate damages are substantial, the individual damages incurred by each Class member are too small to warrant the expense of individual lawsuits.

55. The prosecution of separate actions by Class members would create a risk of inconsistent rulings or incompatible standards of conduct for Defendant. Classwide resolution will conserve judicial resources and provide uniform relief to similarly situated consumers.

**COUNT I**
**Violation of the TCPA, 47 U.S.C. § 227(c)**
**(On Behalf of Plaintiff and the Do Not Call Registry Class)**

56. Plaintiff repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

57. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

58. 47 C.F.R. § 64.1200(e) provides that § 64.1200(c) is "applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

59. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection" may bring a private action based on a violation of those regulations. 47 U.S.C. § 227(c)(5).

60. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, sending, or causing to be initiated or sent telephone solicitations to telephone subscribers, including Plaintiff and Class members, whose telephone numbers were registered on the National Do Not Call Registry.

61. Defendant violated 47 U.S.C. § 227(c)(5) by sending Plaintiff and Class members more than one telephone solicitation within a 12-month period in violation of 47 C.F.R. § 64.1200. As a result of Defendant's conduct, Plaintiff and Class members suffered actual damages and are entitled to statutory damages of up to $500 per violation and up to $1,500 per willful or knowing violation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the class, prays for the following relief:

a. An order certifying this case as a class action on behalf of the class as defined above, and appointing Plaintiff as the representative of the class and Plaintiff's counsel as Class Counsel;

b. A declaration that Defendant's practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227;

c. An injunction requiring Defendant to cease all unlawful text message solicitations to numbers on the National Do Not Call Registry, and to otherwise protect the interests of the Class;

d. An award of actual and statutory damages for Plaintiff and each member of the class;

e. Such further and other relief as the Court deems necessary.

## JURY DEMAND

Plaintiff and Class Members hereby demand a trial by jury.

Dated: June 10, 2026

Respectfully submitted,

**HIRALDO P.A.**

*By: /s/ Manuel S. Hiraldo*
Manuel S. Hiraldo
Florida Bar No. 030380
(*pro hac vice*)
246 Shore Court
Lauderdale-by-The-Sea, Florida 33308
mhiraldo@hiraldolaw.com
Telephone: 954.400.4713

**EDELSBERG LAW, P.A.**
Scott Edelsberg, Esq. (CA Bar No. 330990)
1925 Century Park E #1700
Los Angeles, CA 90067
Telephone: 305-975-3320
scott@edelsberglaw.com
*Counsel for Plaintiff and the Proposed Class*