Robert W. Thompson (Bar No. 106411)
*rthompson@ctsclaw.com*
Dylan Cosby (Bar No. 360846)
*dcosby@ctsclaw.com*
**CALLAHAN, THOMPSON, SHERMAN & CAUDILL, LLP**
2601 Main Street, Suite 800
Irvine, California 92614
Tel: (949) 261-2872
Fax: (949) 261-6060

Attorneys for Defendant,
**S. BROWN & ASSOCIATES, INC.**

CTSC law
CALLAHAN THOMPSON SHERMAN & CAUDILL LLP

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

REBECKA MILLER, individually and on behalf of all others similarly situated,

Plaintiff(s),

v.

S. BROWN & ASSOCIATES, INC.,

Defendant(s).

Case No.: 2:26-cv-01480-MWC-SSC

JUDGE: Hon. Michelle Williams Court
COMPLAINT DATE: 06/10/2026

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF NOTICE OF MOTION AND MOTION.TO DISMISS THE SECOND AMENDED COMPLAINT**

DISCOVERY CUT OFF: NONE
MOTION CUT OFF: NONE
FSC DATE: NONE
TRIAL DATE: NONE

///

///

///

///

///

///

///

///

CTSC law
CALLAHAN THOMPSON SHERMAN & CAUDILL LLP

## TABLE OF CONTENTS


I. INTRODUCTION ........ - 1 -
II. BACKGROUND ........ - 2 -
III. LEGAL STANDARD ........ - 4 -
IV. ARGUMENT ........ - 4 -
A. Section 227(c)(5) Does Not Provide a Private Right of Action for Text Messages ........ - 4 -
B. The SAC Does Not Plead Facts Plausibly Establishing That SBA Initiated the Messages ........ - 9 -
**1.** The governing standard. ........ - 9 -
**2.** The telephone number allegation does not commit to any fact. ........ - 10 -
**3.** The content and timing allegations were already rejected by this Court's Order. ........ - 11 -
C. The "Caused To Be Initiated or Sent" Theory Fails Because the SAC Pleads No Agency Facts ........ - 12 -
D. In the Alternative, the SAC's Own Allegations Establish an Established Business Relationship That Removes the Messages from the Statute ........ - 13 -
E. Plaintiff Lacks Standing to Seek Injunctive Relief ........ - 15 -
F. The Willfulness Allegations Are Conclusory ........ - 16 -
G. Dismissal Should Be Without Leave to Amend ........ - 16 -
V. CONCLUSION ........ - 17 -

CTSC law
CALLAHAN THOMPSON SHERMAN & CAUDILL LLP

**Cases**

*Abante Rooter & Plumbing v. Farmers Grp., Inc.*, No. 17-cv-03315-PJH, 2018 WL 288055 (N.D. Cal. Jan. 4, 2018) ........ - 10 -, - 11 -, - 12 -

*Alexander v. Sandoval*, 532 U.S. 275 (2001) ........ - 6 -

*Ashcroft v. Iqbal*, 556 U.S. 662 ........ - 4 -, - 12 -, - 15 -, - 16 -

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 ........ - 4 -

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) ........ - 15 -, - 16 -

*D'Agostino v. Circle K Stores Inc.*, 2026 WL 1098239 (D. Ariz. Apr. 23, 2026) ........ - 5 -, - 8 -

*Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018) ........ - 15 -

*Foman v. Davis*, 371 U.S. 178 (1962) ........ - 16 -

*Gomez v. Campbell-Ewald Co.*, 768 F.3d 871 (9th Cir. 2014) ........ - 10 -, - 12 -

*Howard v. Republican National Committee*, 164 F.4th 1119 (9th Cir. 2026)- 4 -, - 6 -, - 7 -, - 15 -

*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018) ........ - 4 -

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146 (2025) ........ - 5 -

*Salaiz v. eHealthInsurance Servs., Inc.*, 2023 WL 2622138 (N.D. Cal. Mar. 22, 2023) ........ - 12 -

*Sapan v. Shore Cap. Corp.*, No. 8:23-cv-01974-FWS-JDE, 2024 WL 4002622 (C.D. Cal. Aug. 23, 2024) ........ - 10 -

*Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009) ........ - 6 -

*Sprewell v. Golden State Warriors* 266 F.3d 979 (9th Cir. 2001)..- 4 -, - 13 -, - 15 -

*Steidinger v. Blackstone Medical Services*, No. 25-2398, 2026 U.S. App. LEXIS 20613 (7th Cir. July 14, 2026) ........ - 1 -, - 4 -, - 5 -, - 6 -, - 7 -

*Taha v. Momentive Software, Inc.*, 2026 WL 974297 (C.D. Cal. Mar. 11, 2026) ........ - 5 -, - 8 -

*Thomas v. Taco Bell Corp.*, 582 F. App'x 678 (9th Cir. 2014) ........ - 10 -

*United States v. Ritchie*, 342 F.3d 903 ........ - 4 -

*Webster v. Fall*, 266 U.S. 507 (1925) ........ - 6 -, - 7 -

*Wilson v. Cirkul Inc.*, 2026 WL 1508003 (D. Or. Apr. 14, 2026) ........ - 5 -, - 8 -

*Wood v. Farmers Grp., Inc.*, No. 2:22-cv-06103-SVW-MRW, 2023 WL 2628086 (C.D. Cal. Feb. 7, 2023)) ........ - 10 -

*Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981 (9th Cir. 2009)........... - 16 -

**Statutes**

28 U.S.C. § 1292............................................................................................ - 9 -
47 C.F.R. § 64.1200.......................... - 1 -, - 2 -, - 3 -, - 6 -, - 9 -, - 13 -, - 14 -, - 15 -
47 U.S.C. § 227......................... - 1 -, - 2 -, - 3 -, - 5 -, - 6 -, - 7 -, - 9 -, - 13 -, - 16 -

CTSC law CALLAHAN THOMPSON SHERMAN & CAUDILL LLP

CTSC law
CALLAHAN THOMPSON SHERMAN & CAUDILL LLP

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

On July 14, 2026, the Seventh Circuit became the first court of appeals to decide whether the private right of action Plaintiff invokes, 47 U.S.C. § 227(c)(5), reaches text messages. It held that it does not: the provision affords a remedy to a person who "has received more than one telephone call," and a text message is not a "telephone call" within the meaning of the statute Congress enacted. *Steidinger v. Blackstone Medical Services*, No. 25-2398, 2026 U.S. App. LEXIS 20613 (7th Cir. July 14, 2026). Every communication alleged in the SAC is a text message. SAC ¶¶ 22-26. SBA recognizes that this Court considered the status of text messages under section 227(c) in its June 8, 2026 Order, before SBA was a party. SBA thus raises the question at its first opportunity, on a landscape that has changed, and addresses it in Part IV.A below.

Independent of that gateway defect, this Court has already identified what a plaintiff must plead to state the claim asserted here. In its June 8, 2026 Order dismissing the First Amended Complaint, the Court held that a claim under 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c) requires facts plausibly showing either that the defendant itself took the steps necessary to physically place the text messages at issue, or that the sender acted as the defendant's agent under ordinary agency principles, pleaded with facts establishing authority or ratification. Order, ECF No. 37, at 4. The Court held that allegations connecting a defendant to the content of a message, the products it advertises, or the data it reflects establish, at most, "some relationship" between the defendant and a campaign, and do not plead that the defendant sent it. *Id.* at 6.

The Second Amended Complaint ("SAC") does not meet that standard. Its attribution case consists of a disjunctive allegation about the sending telephone number that does not commit to any fact, the same content-based and timing-based inferences the Court's Order rejected, and a secondhand characterization attributed to

counsel for a nonparty. The SAC pleads no facts identifying who operated the sending number, who assembled or transmitted the messages, or on what basis. And although Count I charges in the alternative that SBA "caus[ed]" the messages "to be initiated or sent," SAC ¶ 60, the SAC pleads no agency facts at all: no agent, no contract, no control, no authority, no ratification. The claim therefore fails under the standards this Court has already articulated in this case.

The claim independently fails for a further reason apparent on the face of the pleading. Section 227(c)(5) reaches only "telephone solicitations," and Congress defined that term to exclude any call or message to a person with whom the caller has an established business relationship. 47 U.S.C. § 227(a)(4)(B); 47 C.F.R. § 64.1200(f)(15)(ii). The SAC pleads the relationship: a vehicle purchase, temporary insurance coverage placed for Plaintiff through the program SBA administers, coverage in force on the date of every message, no termination by either party, and a program whose disclosed design is that "the customer is contacted and offered continuous coverage." SAC ¶¶ 15-26. Taking the SAC's allegations as true, including its allegation that SBA was the caller, the messages fall within the statutory exclusion, and no telephone solicitation is alleged.

Plaintiff also lacks standing to pursue the injunction she requests, and her demand for treble damages rests on no factual allegation of willful or knowing conduct. Because this is Plaintiff's third pleading, filed after the Court's Order identified the governing standards, dismissal should be without leave to amend. Amendment would also be futile: the established business relationship arises from the very transaction Plaintiff must plead to explain how her name, vehicle, coverage, and expiration date came to appear in the messages, so no repleading can cure the defect.

## II. BACKGROUND

SBA is a New Jersey insurance administrator. SAC ¶¶ 12-13. It administers a point-of-sale insurance program through which participating automobile dealerships may place temporary coverage for customers who cannot present acceptable proof of



CTSC law CALLAHAN THOMPSON SHERMAN & CAUDILL LLP

insurance at delivery. SAC ¶¶ 13-14. The program is insured by National General Insurance Company ("NGIC"), and SBA serves as program administrator for NGIC. SAC ¶ 16. Dealerships bind the temporary coverage through a dealer-facing portal, submitting enrollment forms and printing binders and declarations pages. SAC ¶ 15. By the program's disclosed design, "after a dealer uses the program for a customer, the customer is contacted and offered continuous coverage." SAC ¶ 17. In administering the program, SBA receives customer and coverage information associated with each temporary placement, including names, telephone numbers, vehicle information, and coverage expiration dates. SAC ¶¶ 18-19.

Plaintiff alleges that she purchased a GMC Terrain from a dealership and that, in connection with that transaction, the dealership placed temporary point-of-sale coverage with NGIC through the program administered by SBA. SAC ¶ 20. Her temporary coverage ran through December 19, 2025. SAC ¶ 25. Between November 20 and November 28, 2025, while that coverage was in force, six text messages were sent to her cellular telephone from telephone number (833) 535-3394. SAC ¶¶ 23-24. Each message identified Plaintiff by name, referenced her "temporary auto insurance with NGIC," identified her vehicle, stated that the coverage "ends on 12/19/25," and offered six- or twelve-month replacement automobile insurance, with a callback telephone number, a quote link, and opt-out instructions. SAC ¶¶ 25-26. The insurance products offered were those of Direct Auto Insurance. SAC ¶ 30.

Plaintiff filed this action against Direct General Insurance Agency, Inc. On June 8, 2026, the Court dismissed the First Amended Complaint with leave to amend, holding that it pleaded neither direct nor vicarious liability for the same six messages. Order, ECF No. 37, at p.7. Plaintiff filed the SAC on June 10, 2026, dropping Direct General "without prejudice to later naming" it, SAC at 1 n.1, and naming SBA. The SAC asserts one count, under 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c), on behalf of a putative nationwide class, seeking statutory damages, enhanced damages, and an injunction. SAC ¶¶ 46, 56-61; Prayer ¶¶ (c)-(d).




CTSC law CALLAHAN THOMPSON SHERMAN & CAUDILL LLP

CTSC law
CALLAHAN THOMPSON SHERMAN & CAUDILL LLP

## III. LEGAL STANDARD

To survive a motion under Rule 12(b)(6), a complaint must plead "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Legal conclusions "are not entitled to the assumption of truth." *Id*. at 679. Facts "merely consistent with" liability "stop[] short of the line between possibility and plausibility." *Id*. at 678 (quoting *Twombly*, 550 U.S. at 557). Where the facts pleaded do not permit the court to infer more than the mere possibility of misconduct, the complaint has not shown entitlement to relief. *Id*. at 679. A plaintiff may also plead herself out of court by alleging facts that defeat the claim. *Sprewell v. Golden State Warriors* 266 F.3d 979, 988-89 (9th Cir. 2001). In ruling on the motion, the Court may consider the complaint, exhibits attached to it, and matters subject to judicial notice, including the Court's prior orders in this action. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).

## IV. ARGUMENT

### A. SECTION 227(C)(5) DOES NOT PROVIDE A PRIVATE RIGHT OF ACTION FOR TEXT MESSAGES

Before reaching any question about who sent the messages or whether they were solicitations, we ask this court to evaluate the gateway defect in the claim in a legally landscape that has materially changed since July: the private right of action Plaintiff invokes does not extend to text messages. On July 14, 2026, the Seventh Circuit became the first court of appeals, post *McLaughlin*, to decide that precise question, holding that a text message is not a "telephone call" within the meaning of 47 U.S.C. § 227(c)(5) and that the provision therefore does not permit plaintiffs to sue for the receipt of unwanted texts. *Steidinger,* 2026 U.S. App. LEXIS 20613, at *2 (7th Cir. July 14, 2026). SBA is aware that this Court reached a different conclusion in its June 8, 2026 Order, in reliance on *Howard v. Republican National Committee*, 164

F.4th 1119 (9th Cir. 2026), and on *Taha v. Momentive Software, Inc.*, 2026 WL 974297 (C.D. Cal. Mar. 11, 2026), *D'Agostino v. Circle K Stores Inc.*, 2026 WL 1098239 (D. Ariz. Apr. 23, 2026), and *Wilson v. Cirkul Inc.*, 2026 WL 1508003 (D. Or. Apr. 14, 2026). Order, ECF No. 37, at 7-8. SBA does not ask the Court to look past that authority. It asks the Court to look at it again weighed against the persuasive authority out of the 7th Circuit Court of Appeals, because on examination none of it decides the question *Steidinger* decided, and the interpretive method those decisions employ points toward *Steidinger*'s result once the text of section 227(c)(5) is read alongside the rest of the subsection. Which affords a cause of action only to a person "who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection." 47 U.S.C. § 227(c)(5).

Two textual features control here. First, the substantive provisions of section 227(c) repeatedly use the defined term "telephone solicitation," which Congress defined as "the initiation of a telephone call or message." 47 U.S.C. § 227(a)(4). The private right of action, by contrast, is triggered not by receipt of a "solicitation" but by receipt of more than one "telephone call." (Emphasis added). Where Congress uses different language in adjacent provisions of the same subsection, the variation must be given effect: the regulations may govern solicitations delivered by call or message, but the private remedy runs only to recipients of telephone calls. *Steidinger*, 2026 U.S. App. LEXIS 20613, at *6-7. Second, the ordinary public meaning of "telephone call" at enactment in 1991 was a communication by sound; contemporaneous dictionaries defined a telephone as an instrument for reproducing sounds at a distance, and SMS did not exist until the following year. *Id.* at *6. Furthermore, the FCC's 2003 interpretation does not control. Courts are not bound by the Commission's reading of the TCPA and must determine the statute's meaning under ordinary principles of statutory interpretation. *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 155 (2025). Nor can the Commission's regulations enlarge the remedy



CTSC law CALLAHAN THOMPSON SHERMAN & CAUDILL LLP

Congress enacted. "Language in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not." *Alexander v. Sandoval*, 532 U.S. 275, 291 (2001) ("Agencies may play the sorcerer's apprentice but not the sorcerer himself."). Accordingly, 47 C.F.R. § 64.1200(e)'s administrative extension of the do-not-call rules to wireless text messages cannot supply a private remedy that section 227(c)(5) itself withholds, and the statute's remedial purpose cannot overcome its plain language. *Steidinger*, 2026 U.S. App. LEXIS 20613, at *9, *11, *15

*Satterfield* does not foreclose this argument. That case construed the phrase "to make any call" in section 227(b)(1)(A), the autodialer prohibition, in a case where no do-not-call claim was presented. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 949-52 (9th Cir. 2009). After examining the ordinary meaning of the verb "to call" and the statute's privacy purpose, the panel expressly concluded that "the statute is silent as to whether a text message is a call within the Act," and it resolved that silence by deferring to the FCC's 2003 statement that the autodialer prohibition "encompasses both voice calls and text calls," a statement addressed to section 227(b), not to the do-not-call regulations. *Id.* at 953-54 (citing 2003 Report and Order, 18 FCC Rcd. 14014, 14115). The panel also acknowledged that "call" carries "several plain and ordinary meanings" and selected the attempt-to-communicate sense because of the context of the provision before it, *id.* at 953 n.3, and it recognized that "this law was enacted in 1991 when text messaging was not available," *id.* at 954, the very premise from which *Steidinger* begins. Thus *Statterfield* is distinguishable here. Questions which merely lurk in the record are not resolved by the decision that passes over them. *Webster v. Fall*, 266 U.S. 507, 511 (1925). It follows then that a decision that construed a different provision, found the statute silent, and deferred to an agency pronouncement about that different provision is not a holding on the differently worded private right of action in section 227(c)(5).

///



CTSC law CALLAHAN THOMPSON SHERMAN & CAUDILL LLP

*Howard* does not foreclose it either. That case revisited *Satterfield* after *Loper Bright* and *McLaughlin* and concluded that "the conclusion would be the same even in the absence of *Chevron* deference," so that "a 'text message' constitutes a 'call' within the meaning of the TCPA." *Howard*, 164 F.4th at 1123. SBA acknowledges the breadth of that phrasing. But the question presented in *Howard* was whether a text message containing an unplayed video file was a call "ma[d]e" or "initiate[d]" "using an artificial or prerecorded voice" under sections 227(b)(1)(A)(iii) and 227(b)(1)(B); the texts-are-calls discussion supplied the backdrop for the panel's actual holding, which construed the "make" and "initiate" language and affirmed dismissal. *Id.* at 1122-28. General expressions in an opinion are to be taken in connection with the case in which they are used; where they go beyond the question presented, they do not control a later suit in which the point is squarely raised. *Webster*, 266 U.S. at 511. *Howard* had no occasion to consider, and nowhere considered, the feature on which *Steidinger* turns that within section 227(c), Congress used the defined term "telephone solicitation," embracing a "call or message," in the substantive provisions, yet wrote the private remedy to run only to recipients of a "telephone call." Neither section 227(b) prohibition contains that contrast, so nothing in *Howard*'s analysis engages it. More than that, *Howard*'s own method is SBA's method. The panel parsed the precise statutory words provision by provision, held that the statute's privacy purpose could not expand language Congress chose, and invoked the principle that purpose "sheds light only on deciding which of various textually permissible meanings should be adopted." *Howard*, 164 F.4th at 1124-27 (quoting Scalia & Garner, Reading Law 57 (2012)). Applying that discipline to section 227(c)(5), the variation between "telephone call" in the remedy and "call or message" in the definition is a deliberate drafting choice that must be respected, exactly as the *Steidinger* panel concluded when it considered *Howard* directly, grouped it with the other appellate decisions as section 227(b) cases, and found itself uncompelled by it. *Steidinger*, 2026 U.S. App. LEXIS 20613, at *9-10.

CTSC law CALLAHAN THOMPSON SHERMAN & CAUDILL LLP

The district decisions the June 8 Order followed do not bridge the gap, because each rests on one of two moves that the foregoing principles foreclose. The first move is *Taha*'s: that "neither *Satterfield* nor *Howard* elected to use language to limit the scope of their holdings," since both "state that their holdings apply to 'the TCPA.'" *Taha*, 2026 WL 974297, at *3. But the scope of a holding is fixed by the question the court decided, not by the generality of its phrasing. A panel cannot enlarge its holding to provisions not before it through broad wording, and *Satterfield* in fact did limit itself, by grounding its result in deference to an FCC statement about the autodialer provision after declaring the statute silent. *D'Agostino*'s characterization of the matter as "settled law" in this circuit, 2026 WL 1098239, at *5, is accurate as to section 227(b) and inaccurate as to section 227(c)(5), on which no Ninth Circuit holding exists. The second move is *Wilson v. Cirkul*'s: an independent textual review defining a 1991 "telephone call" broadly as a communication made by telephone. *Wilson*, 2026 WL 1508003, at *5. *Wilson* acknowledged that "*Howard*, like *Satterfield*, dealt with § 227(b) not § 227(c)," yet concluded *Howard*'s language "is not limited to § 227(b)," the same dicta-as-holding step as *Taha*. And *Wilson*'s independent review, like the Order and every other pre-*Steidinger* district decision on the plaintiff side, never engaged the meaningful-variation contrast within section 227(c) itself. The only drafting argument it addressed was the weaker point that Congress defined "text message" in section 227(e) in 2018.

That brings SBA to the June 8 Order itself. The Order addressed this question in a distinct posture: it arose on the prior defendant's futility argument opposing leave to amend, was resolved in two paragraphs on the authority discussed above, and issued five weeks before *Steidinger* existed. The Order does not bar consideration of the issue now, for three independent reasons. First, it is interlocutory, and the Court may revise its interlocutory rulings at any time before final judgment. Second, SBA was not a party when the Order issued and has never litigated the question, this motion is its first opportunity. Third, the Order followed district decisions that, as shown, treated

CTSC law
CALLAHAN THOMPSON SHERMAN & CAUDILL LLP

section 227(b) dicta as a section 227(c)(5) holding and never confronted the statutory contrast at the heart of the Seventh Circuit's opinion.

For these reasons, SBA respectfully requests that the Court adopt *Steidinger*'s reasoning and dismiss the SAC on this gateway issue, because every communication alleged in the SAC is a text message. SAC ¶¶ 22-26. In the alternative, should the Court adhere to its prior conclusion, SBA requests certification under 28 U.S.C. § 1292(b). Whether section 227(c)(5) reaches text messages is a controlling, purely legal question whose resolution would terminate this putative nationwide class action, and while courts in this circuit previously found no substantial ground for difference of opinion in the absence of appellate authority, a square conflict between the Seventh Circuit and the reading prevailing in this circuit's district courts now exists, which is the paradigm of a question on which fair-minded jurists have in fact reached contradictory conclusions. At minimum, SBA raises the issue to preserve it.

### B. THE SAC DOES NOT PLEAD FACTS PLAUSIBLY ESTABLISHING THAT SBA INITIATED THE MESSAGES

#### 1. The governing standard.

Section 64.1200(c)(2) prohibits a person from "initiat[ing] any telephone solicitation" to a number on the National Do Not Call Registry, and section 227(c)(5) affords a private action to one who receives more than one telephone call in a twelve-month period "by or on behalf of the same entity" in violation of the regulations. 47 C.F.R. § 64.1200(c); 47 U.S.C. § 227(c)(5). As this Court explained in dismissing the First Amended Complaint, liability under section 227(c) turns on whether the defendant "initiate[s]" a telephone solicitation, and a person initiates a communication when they "either (1) directly make a call, or (2) have an agency relationship with the person who made the call." Order, ECF No. 37, at 3 (quoting *Wood v. Farmers Grp., Inc.*, No. 2:22-cv-06103-SVW-MRW, 2023 WL 2628086, at *2 (C.D. Cal. Feb. 7, 2023)); *see Thomas v. Taco Bell Corp.*, 582 F. App'x 678, 679 (9th Cir. 2014). To allege direct liability, "the complaint must allege facts showing the defendant actually

placed calls violating the TCPA," Order, ECF No. 37, at 4 (quoting *Sapan v. Shore Cap. Corp.*, No. 8:23-cv-01974-FWS-JDE, 2024 WL 4002622, at *4 (C.D. Cal. Aug. 23, 2024)), that is, facts showing the defendant took "the steps necessary to physically place a telephone call." *Id.* (quoting *Sapan v. Bloom Ret. Holdings, Inc.*, No. 8:24-cv-01213-FWS-KES, 2025 WL 1718083, at *3 (C.D. Cal. Apr. 14, 2025)). Alternatively, a defendant may be held vicariously liable for messages physically sent by another, but only where the plaintiff "establishes an agency relationship, as defined by federal common law, between the defendant and a third-party caller," Order, ECF No. 37, at 5 (quoting *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 879 (9th Cir. 2014)), pleaded with facts, not "mere assertions," supporting a reasonable inference of actual authority, apparent authority, or ratification. *Id.* (citing *Brown v. Nano Hr'g Tech Opco, LLC*, No. 3:24-cv-00221-BTM-JLB, 2024 WL 3367536, at *4 (S.D. Cal. July 9, 2024); *Abante Rooter & Plumbing v. Farmers Grp., Inc.*, No. 17-cv-03315-PJH, 2018 WL 288055, at *4 (N.D. Cal. Jan. 4, 2018)). And allegations connecting a defendant to the content of a campaign, its brand, its products, its promotional language, its links, permit an inference only "that there is some relationship" between the defendant and the sender, an "inference [that] is not enough" to state a claim. Order, ECF No. 37, at 6 (quoting *Abante*, 2018 WL 288055, at *4).

**2. The telephone number allegation does not commit to any fact.**

The SAC's only allegation connecting SBA to the transmission of the messages is paragraph 24: the sending number was “owned, leased, controlled, and/or used by Defendant.” Pleading in the alternative is permitted, but each alternative must independently state a claim, and this string does not. Read most favorably to Plaintiff, the paragraph alleges that SBA had some connection, in one of four unspecified forms, to the number from which the messages originated. The weakest alternative, that the number was “used by” SBA, does not allege that SBA took the steps necessary to physically place the messages; a number may be “used” in a campaign involving a party without that party assembling, addressing, or transmitting anything. The SAC



CTSC law CALLAHAN THOMPSON SHERMAN & CAUDILL LLP

CTSC law
CALLAHAN THOMPSON SHERMAN & CAUDILL LLP

pleads no facts about who provisioned the number, who operated the platform from which the messages issued, or who caused any individual message to be sent. An allegation that does not commit to whether the defendant or someone else transmitted the messages does not plausibly plead that the defendant did.

The same equivocation is parroted, which alleges only that SBA violated the regulation "by initiating, sending, or causing to be initiated or sent" the messages at issue. SAC ¶ 60. But a complaint that cannot say whether SBA sent the messages or merely caused another to send them has pleaded neither. It has pleaded uncertainty. The regulation reaches the initiation of a solicitation, whether by the defendant or by an agent acting on its behalf. The SAC pleads facts establishing neither only a connection to a telephone number, stated four ways.

**3. The content and timing allegations were already rejected by this Court's Order.**

The remainder of the SAC's attribution case, paragraphs 25 through 29 and 31 through 32, is inference from message content and timing: the messages referenced the program SBA administers, reflected customer and coverage data of the type SBA maintains, and were timed to the expiration date in the program's records. That is the same mode of reasoning the Court rejected in dismissing the prior pleading, where the messages advertised the then-defendant's own products, directed recipients to its own callback number, and linked to its own website. Order, ECF No. 37, at 4, 6. Such allegations permit an inference only "that there is some relationship" between a defendant and the campaign, and that "inference is not enough." Order, ECF No. 37, at 6 (quoting *Abante*, 2018 WL 288055, at *4).

The inference is weaker here than it was there, because the SAC's exclusivity premise fails on its face. Paragraph 27 asserts that the messages contain information "that only Defendant receives and maintains," then concedes in the same paragraph that "the originating dealership" has access to the same information. And because SBA administers the program for NGIC, the insurer, SAC ¶ 16, using enrollment, binder,

and coverage records for NGIC coverage, SAC ¶¶ 18-19, the insurer holds its own coverage data as well. Where the pleaded facts identify multiple holders of the information reflected in the messages, possession of that information cannot, without more, plausibly identify the sender. *Iqbal*, 556 U.S. at 678. The SAC supplies nothing more: no allegation that SBA personnel drafted or approved the messages, operated the callback number or quote-link destinations, or took any step by which a message moved from SBA to Plaintiff's telephone.

### C. THE "CAUSED TO BE INITIATED OR SENT" THEORY FAILS BECAUSE THE SAC PLEADS NO AGENCY FACTS

To the extent Count I rests on the allegation that SBA "caus[ed]" the messages "to be initiated or sent," SAC ¶ 60, it fails under this Court's prior Order. A defendant is liable for messages physically sent by another only where the plaintiff "establishes an agency relationship, as defined by federal common law, between the defendant and a third-party caller," pleaded with facts, not "mere assertions," supporting actual authority, apparent authority, or ratification. Order, ECF No. 37, at 5 (quoting *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 879 (9th Cir. 2014), and citing *Abante*, 2018 WL 288055, at *4). Actual authority requires facts showing the principal's "right to control . . . the manner and the means" of the campaign, Order, ECF No. 37, at 6 (quoting *Abante*, 2018 WL 288055, at *4), and ratification requires knowing acceptance of the campaign's benefits with "knowledge of material facts" about the sender's acts. Order, ECF No. 37, at 7 (citing *Salaiz v. eHealthInsurance Servs., Inc.*, 2023 WL 2622138, at *4 (N.D. Cal. Mar. 22, 2023)).

The First Amended Complaint at least attempted such allegations, and the Court found them conclusory. Order, ECF No. 37, at 6-7. The SAC does not attempt them at all: it identifies no agent and alleges no contract, direction, control, authority, or ratification. The closest it comes is paragraph 30, which alleges that Direct Auto's counsel "confirmed" the messages were "sent by" SBA. That is not an agency allegation. It identifies no transmitting party, no relationship between that party and



CTSC law
CALLAHAN THOMPSON SHERMAN & CAUDILL LLP

SBA, and no request, instruction, command, or control by SBA over anyone. And if "sent by" means SBA caused some unidentified third party to transmit the messages, paragraph 30 concedes an intermediary while pleading nothing about SBA's relationship to it, the precise defect that doomed the First Amended Complaint. Even assuming someone else sent the messages, plaintiff alleges absolutely no agency facts. The vicarious branch of Count I should be dismissed.

### D. IN THE ALTERNATIVE, THE SAC'S OWN ALLEGATIONS ESTABLISH AN ESTABLISHED BUSINESS RELATIONSHIP THAT REMOVES THE MESSAGES FROM THE STATUTE

Even if section 227(c)(5) reaches text messages, a conclusion *Steidinger* forecloses but this Court's June 8 Order adopted, the claim fails for an independent reason apparent on the face of the pleading. Accepting the SAC's allegation that SBA was the caller, the SAC fails to plead the threshold element of the claim: that the messages were "telephone solicitations." Congress built the limitation into the definition itself. A telephone solicitation is a call or message encouraging a purchase, "but such term does not include a call or message . . . to any person with whom the caller has an established business relationship." 47 U.S.C. § 227(a)(4)(B). The implementing regulation is identical. 47 C.F.R. § 64.1200(f)(15)(ii). Because the exclusion is part of the definition, a complaint whose own allegations establish the relationship pleads the absence of an essential element. *Sprewell*, 266 F.3d at 988-89.

An established business relationship is "a prior or existing relationship formed by a voluntary two-way communication," "with or without an exchange of consideration," on the basis of the subscriber's "purchase or transaction" with the entity within the preceding eighteen months, "which relationship has not been previously terminated by either party." 47 C.F.R. § 64.1200(f)(5). Termination requires a seller-specific do-not-call request. 47 C.F.R. § 64.1200(f)(5)(i). The SAC pleads every element.

///





CTSC law CALLAHAN THOMPSON SHERMAN & CAUDILL LLP

Plaintiff alleges that she purchased a vehicle and that, in connection with that purchase, temporary insurance coverage was placed for her through the program SBA administers. SAC ¶ 20. The transaction ran through SBA's own infrastructure: the dealer-facing portal, the enrollment forms submitted through it, and the binder and coverage records SBA maintains for every placement, including Plaintiff's. SAC ¶¶ 15, 18-19, 21. The regulation asks for a "purchase or transaction," with or without consideration. It does not require that the subscriber pay the caller. An insurance placement effected through SBA's program, with SBA as administrator for the insurer, SAC ¶ 16, is a transaction with the program and its administrator by any ordinary understanding of the word.

The transaction occurred in November 2025 and the messages followed within days, between November 20 and 28, 2025, well inside the eighteen-month window. SAC ¶¶ 20, 23. The relationship was not merely recent. It was current. The temporary coverage did not expire until December 19, 2025, so Plaintiff was a program insured on the date of every message. SAC ¶ 25. And the SAC alleges no do-not-call request to SBA, no opt-out, and no communication terminating the relationship before the messages were sent, although each message contained opt-out instructions. SAC ¶ 26.

The messages also concerned the relationship itself. Each referenced Plaintiff's own temporary NGIC coverage, her own vehicle, and that coverage's expiration date, and offered continuing coverage to replace it. SAC ¶ 25. That is what the SAC says the program is disclosed to do: "after a dealer uses the program for a customer, the customer is contacted and offered continuous coverage." SAC ¶ 17. Plaintiff does not allege stranger telemarketing that happened to reach a customer. She alleges the customer-contact step of the very program through which her coverage existed. It does not matter that the messages offered replacement coverage rather than renewal of the temporary binder. A follow-up offer that the customer was told, at the formation of the relationship, would be part of the relationship falls within it.

///

CTSC law CALLAHAN THOMPSON SHERMAN & CAUDILL LLP

Paragraph 35's contrary assertions, that Plaintiff "did not have an established business relationship with Defendant" and "did not purchase goods or services from Defendant," cannot preserve the claim. The first is a bare legal conclusion entitled to no assumption of truth. *Iqbal*, 556 U.S. at 678-79. The second attacks a requirement the regulation does not impose, because the definition turns on a purchase or transaction, with or without consideration, not on privity of payment. 47 C.F.R. § 64.1200(f)(5). Where the specific factual allegations describe the transaction, the enrollment, the administrator relationship, and the in-force coverage, a contrary label does not control. *Sprewell*, 266 F.3d at 988-89 [“a plaintiff can . . . plead himself out of a claim by including unnecessary details contrary to his claims.”].

Finally, if a text message is a "call" under section 227(c), as this Court's prior Order concluded, then the exclusion applies to text messages for the same reason the prohibition does. Order, ECF No. 37, at 7-8. The Order's premise, drawn from *Howard*, is that the word carries its ordinary meaning uniformly throughout the TCPA. *Howard*, 164 F.4th at 1123. On that premise, the same sentence of section 227(a)(4) that brings a "call or message" within the definition excludes a "call or message" to a person with an established business relationship. There is no reading on which a text is a call for the prohibition but not for the exclusion embedded in the same definition. Whichever way the threshold question is resolved, the result is the same. If *Steidinger* is right, no private right of action exists for these messages. If the Order's reading holds, the messages fall within the established business relationship exclusion, no telephone solicitation is alleged, and the single count fails.

**E. PLAINTIFF LACKS STANDING TO SEEK INJUNCTIVE RELIEF**

Standing must be demonstrated separately for each form of relief sought, and standing to seek an injunction requires a “real and immediate threat of repeated injury.” *City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 111 (1983); *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018). The SAC alleges that




CTSC law CALLAHAN THOMPSON SHERMAN & CAUDILL LLP

Plaintiff's temporary coverage ended on December 19, 2025, SAC ¶ 25, and alleges no facts suggesting that she will again hold coverage through the program, receive another message, or otherwise face future injury. Past exposure to allegedly unlawful conduct does not confer standing to enjoin it. *Lyons*, 461 U.S. at 102. The request for injunctive relief, Prayer ¶ (c), should be dismissed under Rules 12(b)(1) and 12(b)(6).

**F. THE WILLFULNESS ALLEGATIONS ARE CONCLUSORY**

The SAC's request for enhanced damages rests on the bare assertion that whether "Defendant's conduct was knowing and willful" presents a common question. SAC ¶ 50(e); see SAC ¶ 61. No factual allegation addresses SBA's knowledge of Plaintiff's registry listing or any conscious disregard of the regulations. A demand for treble damages supported by no factual matter is a "naked assertion[]" that *Iqbal* instructs courts to set aside. 556 U.S. at 678. If any portion of the SAC survives, the request for enhanced damages under section 227(c)(5) should be dismissed.

**G. DISMISSAL SHOULD BE WITHOUT LEAVE TO AMEND**

Leave to amend is properly denied where amendment would be futile or where the plaintiff has repeatedly failed to cure deficiencies. *Foman v. Davis*, 371 U.S. 178, 182 (1962). The Court's discretion to deny leave is "particularly broad" where leave has previously been granted and the deficiencies persist. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009). This is Plaintiff's third pleading. The June 8 Order set out what a section 227(c) plaintiff must allege to establish direct or vicarious liability and cautioned that failure to cure could result in dismissal with prejudice under Rule 41(b). Order at 3-7, 9. Plaintiff responded by discarding her vicarious theory, substituting a new defendant, and repackaging the same content-based inferences the Order rejected, while reserving the right to re-add the dismissed defendant later. SAC at 1 n.1. Amendment would also be futile. The threshold defect identified in Part IV.A is purely legal, because no repleading can transform the six text messages alleged in the SAC into "telephone calls" under section 227(c)(5). And the defect identified in Part IV.D is definitional, because the established business

CTSC law CALLAHAN THOMPSON SHERMAN & CAUDILL LLP

relationship arises from the very transaction Plaintiff must plead to explain how her name, vehicle, coverage, and expiration date came to appear in the messages. A fourth complaint cannot cure either. Dismissal should be with prejudice.

## V. <u>CONCLUSION</u>

For the foregoing reasons, SBA respectfully requests that the Court dismiss the Second Amended Complaint in its entirety, without leave to amend, and grant such other relief as the Court deems proper.

Respectfully submitted,

DATED: July 30, 2026

**CALLAHAN, THOMPSON, SHERMAN & CAUDILL, LLP**

By: /s/ Dylan Cosby
Robert W. Thompson
Dylan Cosby
Attorneys for Defendant,
**S. BROWN & ASSOCIATES, INC.**

CTSC law
CALLAHAN THOMPSON SHERMAN & CAUDILL LLP

CTSC law
CALLAHAN THOMPSON SHERMAN & CAUDILL LLP

**CERTIFICATE OF SERVICE**

I, Dylan Cosby, attorney for defendant S. BROWN & ASSOCIATES, INC., hereby certify that on July 30, 2026, I caused a complete and accurate copy of the foregoing to be served via this Court's CM/ECF notification system, which will electronically serve all participants in this case.

*/s/ Dylan Cosby*
Dylan Cosby