**EDELSBERG LAW, P.A.**
Scott Edelsberg, Esq. (CA Bar No. 330990)
1925 Century Park E #1700
Los Angeles, CA 90067
Telephone: 305-975-3320
scott@edelsberglaw.com
*Counsel for Plaintiff and Proposed Class*

[*Additional counsel listed on signature page*]

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| REBECKA MILLER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>S. BROWN & ASSOCIATES, INC.,<br><br>Defendant. | Case No. 2:26-cv-01480-MWC-SSC<br><br>Honorable Michelle Williams Court<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**<br><br>Hearing Date: September 4, 2026<br>Time: 1:30 PM<br>Courtroom: 6A |

# TABLE OF CONTENTS


I. INTRODUCTION ........................................................................ 6
II. ARGUMENT ................................................................................ 9
A. Binding Precedent Holds that the TCPA Covers Text Messages ............. 9
B. *Steidinger* is Neither Binding nor Persuasive ....................................... 12
1. *Steidinger's* interpretation is flawed and misapplies the fixed-meaning canon to freeze the statute's application in 1991 ............................... 12
2. *Steidinger* is internally inconsistent, and the TCPA itself disproves *Steidinger's* premise that a "call" and a "message" are mutually exclusive ................................................................................ 14
3. Section 227(c)'s structure and implementing regulations confirm that its private remedy applies to telemarketing texts .............................. 17
C. Plaintiff Plausibly Alleges that Defendant Sent the Text Messages ....... 18
D. Although not Required, Plaintiff Plausibly Alleges Lack of an EBR ..... 21
III. CONCLUSION ............................................................................ 24

# TABLE OF AUTHORITIES

## CASES

*Abboud v. Circle K Stores Inc.*,
2025 U.S. Dist. LEXIS 13605 (D. Ariz. Jan. 27, 2025) .............................. 21-22

*Alvarez v. Fiesta Nissan, Inc.*,
2026 U.S. Dist. LEXIS 14155 (S.D. Tex. Jan. 26, 2026) .......................... passim

*Atlantic Cleaners & Dyers, Inc. v. United States*,
286 U.S. 427 (1932) .......................................................................... 16

*Barton v. Delfgauw*,
2025 U.S. Dist. LEXIS 159809 (W.D. Wash. Aug. 18, 2025) .......................... 10

*Brown v. Gardner*,
513 U.S. 115 (1994) .......................................................................... 16

*D'Agostino v. Circle K Stores Inc.*,
2026 U.S. Dist. LEXIS 89449 (D. Ariz. Apr. 22, 2026) .............................. 6, 14

*Dilanyan v. Hugo Boss Fashions, Inc.*,
2025 U.S. Dist. LEXIS 254358 (C.D. Cal. Dec. 3, 2025) ............................... 6-7

*Hopkins v. HomeLight, Inc.*,
2026 U.S. Dist. LEXIS 154579 (W.D. Wash. July 13, 2026) ............................ 6

*Howard v. Repub. Nat'l Comm.*,
164 F.4th 1119 (9th Cir. 2026) ......................................................... passim

*In re Erickson*,
815 F.2d 1090 (7th Cir. 1987) .......................................................... 13-14

*Jones v. Blackstone Med. Servs., LLC*,
792 F. Supp. 3d 894 ......................................................................... 10

*Krakauer v. Dish Network, LLC*,
311 F.R.D. 384 (M.D.N.C. 2015) .......................................................... 21

*Miller v. Direct Gen. Ins. Ag., Inc.*,
2026 U.S. Dist. LEXIS 126614 (C.D. Cal. June 8, 2026) ........................ 6, 9, 14

*Monsalvo v. Bondi*,
604 U.S. 712 (2025) ........ 9

*Mujahid v. Newity, LLC*,
2025 U.S. Dist. LEXIS 221088 (N.D. Ill. Nov. 10, 2025) ........ 10

*N. Plains Res. Council v. U.S. E.P.A.*,
645 F.2d 1349 (9th Cir. 1981) ........ 9-10

*Park v. Thompson*,
851 F.3d 910 (9th Cir. 2017) ........ 20

*Pennsylvania Dep't of Corr. v. Yeskey*,
524 U.S. 206 (1998) ........ 14

*Pero v. Brown-Daub Chevrolet of Nazareth*,
2026 U.S. Dist. LEXIS 134498 (E.D. Pa. June 17, 2026) ........ 13

*Powerex Corp. v. Reliant Energy Servs., Inc.*,
551 U.S. 224 (2007) ........ 9

*Satterfield v. Simon & Schuster, Inc.*,
569 F.3d 946 (9th Cir. 2009) ........ passim

*Starr v. Baca*,
652 F.3d 1202 (9th Cir. 2011) ........ 20

*Steidinger v. Blackston Med. Servs.*,
2026 U.S. App. LEXIS 20613 (7th Cir. July 14, 2026) ........ passim

*Taha v. Momentive Software, Inc.*,
2026 U.S. Dist. LEXIS 54376 (C.D. Cal. Mar. 11, 2026) ........ 9, 14

*United States Postal Service v. Konan*,
146 S. Ct. 736 (2026) ........ 15

*United States v. Dish Network, LLC*,
256 F. Supp. 3d 810, 2017 WL 2427297 (C.D. Ill. June 5, 2017) ........ 21

*United States v. Paulson*,
68 F.4th 528 (9th Cir. 2023) ........ 11

*Wilson v. Better Mortg. Corp.*,
2025 U.S. Dist. LEXIS 251694 (S.D.N.Y. Dec. 5, 2025) ................................. 10

*Wilson v. Cirkul Inc.*,
2026 U.S. Dist. LEXIS 119804 (D. Or. Apr. 14, 2026) ................................... 14

*Wilson v. MEDVIDI, Inc.*,
2025 U.S. Dist. LEXIS 198827 (N.D. Cal. Oct. 7, 2025) ............................10-11

*Wilson v. Mountainside Fitness Acq. LLC*,
2026 U.S. Dist. LEXIS 4157 (D. Ariz. Jan. 9, 2026) ....................................... 10

*Wilson v. Skopos Fin., LLC*,
2025 U.S. Dist. LEXIS 138638 (D. Or. July 21, 2025).................................... 10

*Wisconsin Central Ltd. v. United States*,
585 U.S. 274 (2018)......................................................................................... 13

Plaintiff Rebecka Miller responds in opposition to Defendant S. Brown & Associates, Inc.'s Motion to Dismiss Plaintiff's Second Amended Complaint, [ECF No. 52], and states:

## I. <u>INTRODUCTION</u>

This Court previously decided – based on binding precedent – that "text messages must constitute 'calls' under Section 227(c)(5)[.]" *Miller v. Direct Gen. Ins. Ag., Inc.*, No. 2:26-cv-01480-MWC-SSC, 2026 U.S. Dist. LEXIS 126614, at *13 (C.D. Cal. June 8, 2026) (collecting cases); *see also Hopkins v. HomeLight, Inc.*, No. 26-cv-5017-BHS, 2026 U.S. Dist. LEXIS 154579, at *7 (W.D. Wash. July 13, 2026)("Binding Ninth Circuit precedent resolves this issue….While both *Satterfield* and *Howard* arose in the context of § 227(b), the same logic and reasoning underlying those decisions applies with equal force to § 227(c).")(citations omitted). Accordingly, "[a]lthough [Defendant's] counsel seems determined to ignore it, settled law from the Ninth Circuit Court of Appeals establishes that a TCPA violation may arise from unsolicited text messages." *D'Agostino v. Circle K Stores Inc.*, No. CV-26-01225-PHX-JAT, 2026 U.S. Dist. LEXIS 89449, at *13-14 (D. Ariz. Apr. 22, 2026) (citations omitted).

Defendant insists that a non-binding decision from a panel of the Seventh Circuit should cause this Court to revisit its prior ruling and depart from binding precedent. Defendant further requests for this Court to certify an interlocutory appeal under 28 U.S.C. § 1292(b), while ignoring[1] the fact that two weeks after issuing *Howard v. Repub. Nat'l Comm.*, 164 F.4th 1119 (9th Cir. 2026), the Ninth Circuit denied a petition that sought make the distinction between 227(b) and (c) that Defendant seeks here. *See Dilanyan v. Hugo Boss Fashions, Inc.,* No. 2:25-cv-

[1] During the conferral process, the undersigned alerted Defendant's counsel as to the denial of the petition.

05093-JLS-BFM, 2025 U.S. Dist. LEXIS 254358, at *11 (C.D. Cal. Dec. 3, 2025); *Dilanyan v. Hugo Boss Fashions, Inc.*, No. 25-7951, [DE 7] (9th Cir. Jan 27, 2026)("The petition for permission to appeal is denied.").[2]

In other words, the Ninth Circuit meant what it said: "Text messaging plainly fits within that literal definition of a 'call,' because 'text messaging is a form of communication used primarily between telephones.'" *Howard*, 164 F.4th at 1124. And, contrary to Defendant's contention, *Howard* was not limited to 227(b), the Ninth Circuit affirmed its prior holding that a "call" includes a "text message" under the entire statute. *See id*. at 1123 (citing *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009)). As discussed below, the distinction made by the Seventh Circuit panel between sections 227(b) and (c) creates the very problem this Court and every other in the Ninth Circuit have highlighted – it treats the word "call" inconsistently throughout the statute. Additionally, the panel's decision contains various errors discussed below that render it unpersuasive and, thus, this Court should ignore it.

In addition to asking this Court to ignore binding precedent, Defendant also requests for this Court to ignore the facts of the Second Amended Complaint ("SAC"), [ECF No. 39], which plausibly allege that Defendant sent the violative communications. According to Defendant, "[t]he SAC pleads no facts identifying who operated the sending number, who assembled or transmitted the messages, or on what basis." Mot. at 2. Not so. Plaintiff's Second Amended Complaint alleges that (1) Defendant unilaterally acquired Plaintiff's contact information; (2)

[2] The questions presented in the petition were: (1) "Whether a text message is a 'telephone call' under § 227(c)(5) of the TCPA[;]" and (2) "Whether the Ninth Circuit's decision in *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) is binding after *Loper Bright*, particularly when it dealt with a different subsection of the TCPA than at issue here." *Id*. [D.E. 1], at 3.

Defendant directly sent multiple text messages to Plaintiff's phone; (3) the messages were sent by Defendant utilizing a telephone number that it owns, leases, and/or controls; (4) the messages made reference to a temporary insurance program that Defendant administers and only Defendant possesses the detailed information contained within the messages; (5) Defendant selected Plaintiff's and the Class members for the campaign based on its internal records showing that temporary insurance was about to expire; and, if any doubt remains, (6) counsel for the company whose product is advertised in the messages confirmed that Defendant sent the messages. SAC ¶¶21-31. These detailed allegations show that Defendant plausibly sent the text messages at issue.

Next, Defendant continues to ask this Court to ignore the allegations of the operative pleading and find that Plaintiff and Defendant had an established business relationship. But the Second Amended Complaint directly addresses and refutes Defendant's argument. As alleged, (1) Defendant unilaterally acquired Plaintiff's contact information; (2) Plaintiff never provided her information to Defendant, nor did she inquire or ask Defendant to contact her; and (3) "Plaintiff did not have an established business relationship with Defendant. Plaintiff did not purchase goods or services from Defendant, did not apply to Defendant for insurance, did not request a quote from Defendant, did not visit Defendant's website, did not contact Defendant, and did not ask Defendant to provide continuous coverage." SAC ¶¶21, 35-38. No EBR exists and Defendant's arguments to the contrary are unfounded.

In sum, Defendant's Motion consists of a series of groundless arguments that ask this Court to ignore binding precedent and the allegations of the Second Amended Complaint. Defendant's Motion should be denied.

## II. <u>ARGUMENT</u>

### A. Binding Precedent Holds that the TCPA Covers Text Messages

In *Howard*, the Ninth Circuit unequivocally held as follows: "Text messaging plainly fits within that literal definition of a 'call,' because 'text messaging is a form of communication used primarily between telephones.'" *Howard*, 164 F.4th at 1124 ("Although we thus framed our holding in *Satterfield* in terms of the then-applicable deference required to be given to the FCC's construction, we think it is clear from *Satterfield*'s substantive analysis that the conclusion would be the same even in the absence of *Chevron* deference.")(quoting *Satterfield*, 569 F.3d at 954).

Since then, this Court and every other in the Ninth Circuit have applied *Howard* to hold that text messages are covered under section 227(c). *Miller*, 2026 U.S. Dist. LEXIS 126614, at *13 (citing *Taha v. Momentive Software, Inc.*, No. 8:25-cv-02330-DOC-JDE, 2026 U.S. Dist. LEXIS 54376, 2026 WL 974297, at *3 (C.D. Cal. Mar. 11, 2026)("While both cases reached these decisions in the context of analyzing § 227(b) of the TCPA, rather than § 227(c)(5) at issue here, neither *Satterfield* nor *Howard* elected to use language to limit the scope of their holdings. Both cases state that their holdings apply to 'the TCPA,' and that is how this Court interprets them.")(citations omitted).

Defendant's insistence that *Howard* is not binding because it was decided in a section 227(b) case implies that the word "call" should mean one thing for section 227(b), and a different thing for purposes of section 227(c). Defendant's argument is unsupported by a plain reading of *Howard*'s holding, which drew no such distinction. Moreover, it is a well-established rule of statutory interpretation that "identical words and phrases within the same statute should normally be given the same meaning." *Monsalvo v. Bondi*, 604 U.S. 712, 726 (2025) (quoting *Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224, 232 (2007)); *see also N. Plains*

*Res. Council v. U.S. E.P.A.*, 645 F.2d 1349, 1355 (9th Cir. 1981) ("It is an accepted rule of statutory construction that the same word or phrase 'is presumed to have the same meaning when used in different parts of a statute.'") (citation and quotation marks omitted).

Accordingly, prior to *Howard*, every court in this Circuit and in others have summarily rejected the very argument raised by Defendant. *See Wilson v. Mountainside Fitness Acq. LLC*, No. CV-25-01481-PHX-MTL, 2026 U.S. Dist. LEXIS 4157 (D. Ariz. Jan. 9, 2026) ("The Court concludes that *Satterfield* necessarily applies to § 227(c)(5) because almost the same terminology is used—'telephone call.'") (comparing 47 U.S.C. § 227(b)(1)(A)(iii), with *id.* § 227(c)(5)); *Barton v. Delfgauw*, No. 3:21-cv-05610-DGE, 2025 U.S. Dist. LEXIS 159809, at *21, n.1 (W.D. Wash. Aug. 18, 2025) ("In response to Plaintiff's motion, Defendants argue that there is no liability for text messages at all under § 227(c)(5), only phone calls, relying on *Jones v. Blackstone Med. Servs., LLC*, 792 F. Supp. 3d 894, 2025 U.S. Dist. LEXIS 138371, 2025 WL2042764 (C.D. Ill. July 21, 2025)….This argument is foreclosed by Ninth Circuit precedent.") (citing *Wilson v. Skopos Fin.*, LLC, No. 6:25-CV-00376-MC, 2025 U.S. Dist. LEXIS 138638, 2025 WL 2029274, at *4 (D. Or. July 21, 2025) (continuing to apply *Satterfield* and holding that text messages are actionable under § 227(c)(5))); *Wilson v. Better Mortg. Corp.*, 2025 U.S. Dist. LEXIS 251694, at 814 (S.D.N.Y. Dec. 5, 2025) ("Statutes must be read as a whole, not as a collection of isolated provisions….Section 227(b) of the TCPA uses the same term as § 227(c): 'telephone call.'") (citations omitted); *Mujahid v. Newity, LLC*, No. 25 C 8012, 2025 U.S. Dist. LEXIS 221088, at *4 (N.D. Ill. Nov. 10, 2025) ("Second, interpreting § 227(c) to include text messages is consistent with the text of § 227 as a whole."); *Wilson v. MEDVIDI, Inc.*, No. 5:25-cv-03996-BLF, 2025 U.S. Dist. LEXIS 198827,

at *8 (N.D. Cal. Oct. 7, 2025) ("To begin with, the Court disagrees with the premise that, by defining 'call' with reference to section 227(b) the FCC somehow signaled its position that the term 'call' has a different meaning in section 227(b) and section 227(c), an interpretation which in any case would be disfavored by failing to give consistent meaning to the same term.")(citing *United States v. Paulson*, 68 F.4th 528, 555 (9th Cir. 2023) ("[A] word or phrase is presumed to bear the same meaning throughout a text[.]")).

Defendant's contention that its interpretation is supported by the contrast between section 227(b)'s use of the word "call" and section 227(c)'s reference to a "telephone call" ignores the fact that section 227(b)(1)(B) also uses the words "telephone call." In other words, Defendant's argument would not only request an inconsistent reading between different sections of the statute, but also within section 227(b).

In *Alvarez v. Fiesta Nissan, Inc.*, No. 7:25-CV-00343, 2026 U.S. Dist. LEXIS 14155, at *10 (S.D. Tex. Jan. 26, 2026), the court addressed—and rejected—an identical argument. *See id.* ("Fiesta Nissan points out that the word 'call' is modified by 'telephone' in Section 227(c)(5)….This modification, they argue, precludes the complete phrase 'telephone call' from encompassing the concept of a text message, as telephones are defined by their ability to transmit sound."). The *Alvarez* court reasoned as follows:

> Defendant seems to define "telephone call" as "a call from a telephone as existed in 1991"—that is, *only* able to communicate by voice. But if "telephone" was as absolutely defined by its sound-transmission ability as required by that reading, it would prevent an otherwise unlawful voice call using a telephone with *any* modern features from falling under the statute. Thus, voice calls from almost every modern telephone—most of which can text, among many other capabilities—would not qualify as a "telephone call" under § 227(c)(5).

*Id*. at *12 (emphasis original). By extension, the text messages received by Plaintiff from Defendant are actionable under Section 227(c)(5).

In sum, Plaintiff respectfully submits that this Court should continue to follow binding precedent and reject Defendant's inconsistent reading of the statute.

**B. *Steidinger* is Neither Binding nor Persuasive**

*Steidinger v. Blackston Med. Servs.*, No. 25-2398, 2026 U.S. App. LEXIS 20613 (7th Cir. July 14, 2026) should not alter this Court's analysis. *Steidinger* is an out-of-circuit decision and is not binding here. Moreover, its holding rests on three errors: (1) its statutory interpretation is flawed and misapplies the fixed-meaning canon to freeze the statute's application in 1991; (2) it forces the terms "call" and "message" into mutually exclusive categories that the TCPA itself does not support, producing, as discussed above, an inconsistent definition of "call" throughout the statute; and (3) it divorces § 227(c)(5)'s private remedy from the very subsection and regulations Congress directed that remedy to enforce.

***1. Steidinger's interpretation is flawed and misapplies the fixed-meaning canon to freeze the statute's application in 1991***

*Steidinger* primarily relies on the 1991 dictionary definition of "call" as "to get or try to get into communication by telephone." 2026 U.S. App. LEXIS 20613, at *5. That definition is functional: it asks only whether one person attempted to communicate with another by telephone, not whether the communication consisted of audible sound. *See Howard*, 164 F.4th at 1124 ("Text messaging plainly fits within that literal definition of a 'call,' because 'text messaging is a ***form of communication*** used primarily between telephones.'")(citations omitted)(emphasis added).

Yet the panel imported an audio requirement by consulting a separate 1991 definition of the noun "telephone" — an instrument capable of reproducing sound — and then assumed that every communication made by telephone must itself

reproduce sound. *Steidinger*, 2026 U.S. App. LEXIS 20613, at *5. But "telephone" identifies the instrument through which the communication occurs; it does not convert or modify "call" into a synonym for audible conversation. As other courts have explained, to make a "telephone call" "is to 'get or try to get into communication' with an 'instrument for producing sounds at a distance.' A text message therefore falls reasonably within the literal language of the statute." *Alvarez*, 2026 U.S. Dist. LEXIS 14155, at *14; *see also Pero v. Brown-Daub Chevrolet of Nazareth*, No. 25-7016, 2026 U.S. Dist. LEXIS 134498, at *5 (E.D. Pa. June 17, 2026) ("A text message is a communication (message) transmitted by a telephone (an agency). Thus, it is a 'message' within the scope of the TCPA's prohibition of unwanted telephone solicitations.").

*Steidinger*'s approach is also inconsistent with the fixed-meaning principle on which it purports to rely. In *Wisconsin Central Ltd. v. United States*, the Supreme Court explained that although statutory meaning remains fixed at enactment, "new applications may arise in light of changes in the world." 585 U.S. 274, 284 (2018). The question here, then, is not whether a 1991 telephone's principal function involved sound, but whether SMS falls within the fixed functional category Congress employed — an attempt to communicate by telephone. It does.

The *Alvarez* court found *In re Erickson*, 815 F.2d 1090 (7th Cir. 1987), instructive, describing it as a case in which "the new technology was embraced by the old terms." 2026 U.S. Dist. LEXIS 14155, at *11 ("The Court finds this reasoning persuasive here. Defendant seems to define 'telephone call' as 'a call from a telephone as existed in 1991'—that is, *only* able to communicate by voice. But if 'telephone' was as absolutely defined by its sound-transmission ability as required by that reading, it would prevent an otherwise unlawful voice call using a telephone

with *any* modern features from falling under the statute.") (discussing *In re Erickson*, 815 F.2d 1090)(emphasis original).

In sum, the defining feature of a telephone call is an attempt to communicate by utilizing an instrument that is capable of producing sound, not the transmission of sound. Text messages perform that same communicative function as was contemplated in 1991. Applying § 227(c)(5) to that later technology "'does not demonstrate ambiguity. It demonstrates breadth.'….Just as a mower that both cuts and conditions hay is still a mower, a telephone which communicates texts and voice is still a telephone." *Alvarez*, 2026 U.S. Dist. LEXIS 14155, at *12 (quoting *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 212 (1998)).

**2. *Steidinger* is internally inconsistent, and the TCPA itself disproves *Steidinger's* premise that a "call" and a "message" are mutually exclusive**

As a threshold matter, *Steidinger* is internally inconsistent: it concedes that text messages are "calls" under § 227(b) of the statute but then rejects that texts can be "calls" under § 227(c). *See id.* at *9-10. But courts, including this Court, have recognized that it would be incongruous to treat a text message as a "call" under one section of the TCPA but not another. *See, e.g., Miller v. Direct Gen. Ins. Ag., Inc.*, No. 2:26-cv-01480-MWC-SSC, 2026 U.S. Dist. LEXIS 126614, at *13 (C.D. Cal. June 8, 2026) ("by the same logic and reasoning enunciated in *Howard*, text messages must constitute 'calls' under Section 227(c)(5) as well") (citing *Taha v. Momentive Software, Inc.*, No. 8:25-cv-02330-DOC-JDE, 2026 U.S. Dist. LEXIS 54376, 2026 WL 974297, at *3 (C.D. Cal. Mar. 11, 2026); *D'Agostino v. Circle K Stores Inc.*, No. CV-26-01225-PHX-JAT, 2026 U.S. Dist. LEXIS 89449, 2026 WL 1098239, at *5 (D. Ariz. Apr. 23, 2026); *Wilson v. Cirkul Inc.*, No. 6:25-cv-02036-AP, 2026 U.S. Dist. LEXIS 119804, 2026 WL 1508003, at *5 (D. Or. Apr. 14, 2026)).

Moreover, *Steidinger*'s principal contextual argument, that § 227(a)(4)'s definition of "telephone solicitation" — which refers to a "call or message" — shows that a communication categorized as a message cannot also be a call, *see* 2026 U.S. App. LEXIS 20613, at *7, does not withstand scrutiny. The statute's text confirms that "call" and "message" overlap rather than exclude one another. Indeed, section 227(b)(1)(B) regulates a "telephone call" made "to deliver a message." 47 U.S.C. § 227(b)(1)(B).

In Congress's own usage, "call" describes the act or means of initiating telephone communication, while "message" describes what that communication delivers. The Supreme Court's recent decision in *United States Postal Service v. Konan* is instructive: the Court declined to assign three neighboring statutory terms artificially non-overlapping definitions merely to avoid surplusage, explaining that ordinary statutory terms often overlap and that the anti-surplusage canon is subordinate to ordinary meaning. 146 S. Ct. 736, 746 (2026) ("Konan's proposal is inconsistent with ordinary meaning, which shows that these terms were often used in an overlapping manner….We think that Congress likely used broad, overlapping terms to better keep complaints about mail delivery out of court.")(citations omitted). That Congress wrote "call or message" therefore does not establish that the two categories are mutually exclusive; it establishes only that the broader term "telephone solicitation" was defined to ensure overlap so that it covers all voice and message telephone communications. *Steidinger*'s surplusage argument is therefore incorrect and inconsistent with ordinary meaning and Supreme Court precedent.

Section 227(c)(5)'s own structure reinforces that reading. The paragraph creates a private right of action for a person who receives more than one qualifying "telephone call" in violation of subsection (c)'s regulations, and it then provides an affirmative defense for a defendant that implemented reasonable procedures to

prevent "***telephone solicitations*** in violation of the regulations prescribed under this subsection." 47 U.S.C. § 227(c)(5)(C) (emphasis supplied). Because "telephone solicitation" is expressly defined to include a call or message, Congress's use of that defined term within the same paragraph is powerful evidence that § 227(c)(5) enforces the subsection's telephone solicitation rules — not that it silently carves out an audio-only exception. *Steidinger*'s construction produces an unnatural mismatch, under which the statutory defense addresses a broader category of regulated communications than the liability to which the defense applies.

Nor does the meaningful-variation canon compel *Steidinger*'s result. *See* 2026 U.S. App. LEXIS 20613, at *7. The relevant variation can be explained without assigning "call" different meanings or treating "call" and "message" as mutually exclusive: Congress used "telephone solicitation" to describe the class of regulated marketing communications and used "telephone call" to specify the communications that count toward the statutory threshold for bringing a claim. That usage may leave some non-call messages outside § 227(c)(5) (e.g., a facsimile) while still encompassing SMS communications that qualify as both calls and messages.

Moreover, "there is a presumption that a given term is used to mean the same thing throughout a statute[.]" *Brown v. Gardner*, 513 U.S. 115, 118 (1994)(citing *Atlantic Cleaners & Dyers, Inc.* v. *United States*, 286 U.S. 427, 433 (1932)). Section 227(b)(1)(B) uses the phrase "telephone call," and § 227(b)(1)(A) uses the broader phrase "any call"; as noted above, courts have applied both sections 227(b) and (c) to text messages and it would be inconsistent not to do so. Section 227(c)(5) supplies no definition, audio limitation, or other indication that "telephone call" changes meaning a few paragraphs later. The differences between subsections (b) and (c) — including their triggering conduct, consent rules, frequency requirements, and remedies — define the scope of the respective prohibitions. They

do not change the meaning of "call" throughout the statute as *Steidinger* incorrectly concludes.

### ***3. Section 227(c)'s structure and implementing regulations confirm that its private remedy applies to telemarketing texts***

Subsection (c), titled "Protection of Subscriber Privacy Rights," directs the FCC to protect subscribers from "telephone solicitations to which they object" and to adopt effective procedures for enforcing those privacy rights. *See* 47 U.S.C. § 227(c)(1)–(3). From the TCPA's original enactment in 1991, Congress defined "telephone solicitation" as the initiation of a "call or message" encouraging a commercial transaction. 47 U.S.C. § 227(a)(4). Congress thus framed the entire subsection around a defined category that includes message — not as a later technological update, but as part of the statute's original design.

Congress made the private right of action turn on receipt of more than one qualifying communication "in violation of the regulations prescribed under this subsection." 47 U.S.C. § 227(c)(5). That cross-reference is substantive: it makes subsection (c)'s regulations an express element of the cause of action. The current regulation provides that the national and company-specific do-not-call rules apply to persons making "telephone solicitations or telemarketing calls or text messages to wireless telephone numbers." 47 C.F.R. § 64.1200(e). *Steidinger* treated that rule as largely irrelevant because it was promulgated under subsection (c)'s general rulemaking authority rather than under § 227(c)(5) itself. 2026 U.S. App. LEXIS 20613, at *11. But § 227(c)(5) is an enforcement provision, not a grant of rulemaking authority; the regulations it enforces necessarily arise under the preceding paragraphs. Congress's express incorporation of "the regulations prescribed under this subsection" cannot be given meaningful effect while treating the communications those regulations expressly govern as irrelevant to the statutory remedy.

The FCC's interpretation does not independently create a private cause of action — Congress did. The statutory text determines which communications qualify as calls, and the incorporated regulations determine whether those calls violate subsection (c)'s do-not-call requirements. Once "call" is correctly understood as an attempt to communicate by telephone, § 64.1200(e) confirms that a telemarketing text to a wireless number is among the communications regulated under subsection (c). *Steidinger*'s contrary construction creates a conspicuous enforcement mismatch: the FCC may expressly prohibit a telemarketing text under subsection (c) rules, yet under *Steidinger* the consumer could not invoke the private remedy Congress attached to violations of those very rules.

Plaintiff therefore respectfully submits that this Court should decline to follow the flawed reasoning and holding of *Steidinger* and continue to apply binding precedent to hold that the entire statute covers text message communications.

**C. Plaintiff Plausibly Alleges that Defendant Sent the Text Messages**

Defendant next contends that the "only allegation connecting SBA to the transmission of the messages is paragraph 24[.]" Mot. at 10. Defendant further contends that the "SAC pleads no facts about who provisioned the number, who operated the platform from which the messages issued, or who caused any individual message to be sent." *Id.* at 11. Defendant's statements are false, as is its discussion of this Court's prior order which only addressed whether Plaintiff had sufficiently alleged vicarious, not direct, liability. *See id*.

Contrary to Defendant's contention, the SAC does not merely allege that Defendant had some undefined relationship to the campaign. It alleges that Defendant directly sent six solicitations, owned, leased, controlled, and/or used the originating number, selected Plaintiff for the campaign from its records, and was identified by Direct Auto's counsel as the sender. SAC ¶¶22–24, 30–31. Those

allegations address the act of transmission itself and, together with the detailed surrounding facts, permit a reasonable inference that Defendant took the steps necessary to send the messages.

Defendant's treatment of paragraph 24 of the SAC is also inconsistent with Rule 8. Defendant isolates the least specific alternative—its alleged "use" of the sending number—and argues that this single formulation does not establish initiation. Mot. at 10–11. But Rule 8 expressly permits alternative allegations and provides that, when alternatives are pleaded, "the pleading is sufficient if any one of them is sufficient." Fed. R. Civ. P. 8(d)(2). Thus, even treating "owned, leased, controlled, and/or used" as alternatives, the Court may not select only the weakest verb while disregarding the allegations that Defendant owned or controlled the number from which every message originated. SAC ¶24. Those allegations must be considered with the SAC's direct allegations that Defendant sent the messages and selected the recipients based on information that only it possessed. *Id*. ¶¶21–23, 31.

Considered as a whole, the SAC supplies a concrete theory of direct liability. Each message came from the same number alleged to be owned or controlled by Defendant; each used Plaintiff's name, vehicle, temporary NGIC coverage, and exact expiration date; each was sent shortly before expiration, on consecutive or near-consecutive business days at approximately the same time; and the campaign allegedly targeted customers whose temporary coverage was approaching expiration in Defendant's internal records. *Id*. ¶¶24–29, 31–32. The attached screenshots corroborate the common originating number, uniform content, and repeated transmission pattern. *Id*. ¶23. The SAC further alleges that counsel for the company whose products were advertised confirmed that Defendant sent the messages. *Id*. ¶ 30. This is materially more than an inference based only on a brand name, product, callback number, or link.

Defendant's theory that the dealership—or perhaps NGIC—may also have possessed some of the customer data does not lead to a different conclusion. *See* Mot. at 11–12. That observation supplies a potential competing inference, but it does not erase the alleged ownership or control of the originating number, Defendant's alleged selection of campaign recipients, or the confirmation by Direct Auto's counsel that Defendant was the sender. Plausibility is not a probability test, and where the parties submit competing alternatives, the plaintiff's theory controls. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)("If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6). Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is *implausible*.")(emphasis original).

Nor is Plaintiff required, before discovery, to identify the messaging vendor, platform operator, or employee who executed each text message campaign. Those operational facts are peculiarly within Defendant's possession and control. The Ninth Circuit recognizes that plausibility permits allegations based on circumstantial facts where the internal details are held by the defendant, so long as the pleaded context makes the inference of responsibility plausible. *Park v. Thompson*, 851 F.3d 910, 928-29 (9th Cir. 2017)("Because many of the relevant facts here are known only to the defendant, and in light of the additional facts alleged by Park, we conclude that she has pleaded sufficient facts to state a plausible claim[.]"). Here, carrier records, platform records, campaign logs, and Defendant's own internal database can confirm who provisioned and operated the number. The SAC alleges enough facts to make that discovery warranted; it need not plead the evidence before obtaining it.

Finally, Defendant overreads this Court's prior Order. Mot. at 11. The prior ruling that product and website allegations showed only "some relationship" does not hold that message content and timing are irrelevant. Those facts remain part of the total factual context. More importantly, the SAC now alleges a direct connection between Defendant and the originating number, an internal record-driven selection process conducted by Defendant, and an express third-party confirmation identifying Defendant as sender. SAC ¶¶24, 29–31. Accepting those allegations as true and drawing reasonable inferences in Plaintiff's favor, the SAC plausibly alleges direct initiation of the violative texts by Defendant.

**D. Although not Required, Plaintiff Plausibly Alleges Lack of an EBR**

Preliminary, an established business relationship ("EBR") is an affirmative defense, not an element of her claim that Plaintiff must prove. *See United States v. Dish Network, LLC*, No. 093073, 256 F. Supp. 3d 810, 2017 WL 2427297, at *87 (C. D. Ill. Jun. 5, 2017) ("The Established Business Relationship exception is an affirmative defense"); *Krakauer v. Dish Network, LLC*, 311 F.R.D. 384, 397 (M.D.N.C. 2015) ("the absence of an [established business relationship] is not an element of a TCPA claim that [plaintiff] has to prove"). Accordingly, this Court need not delve into Defendant's affirmative defense until after the completion of discovery. But even if considered now, the SAC plausibly alleges that no EBR between Plaintiff and Defendant exists.

"The relevant regulation states that an established business relationship may arise from a voluntary communication between an entity and a 'residential subscriber' involving 'the subscriber's' purchase or transaction or 'the subscriber's' inquiry or application." *Abboud v. Circle K Stores Inc.*, No. CV-23-01683-PHX-DWL, 2025 U.S. Dist. LEXIS 13605, at *44 (D. Ariz. Jan. 27, 2025)(quoting 47 C.F.R. § 64.1200(c)(2)(ii)). "Here, the relevant 'subscriber' is Plaintiff, but Plaintiff

did not complete any purchases or transactions with Defendant and did not submit any inquiries or applications to Defendant." *Id*. The only alleged encounter was between Defendant and the auto dealership where Plaintiff purchased her vehicle, SAC ¶¶20-21, "but that encounter did not involve any purchase, transaction, inquiry, or application by Plaintiff herself. Thus, Plaintiff cannot be said to have entered into an established business relationship with Defendant." *Abboud*, 2025 U.S. Dist. LEXIS 13605, at *44.

An EBR does not follow merely because Defendant performed back-end administrative functions in a transaction involving other entities. The governing regulation requires a relationship "formed by a voluntary two-way communication between a person or entity and a residential subscriber" and based on the subscriber's "purchase or transaction with the entity" within the preceding eighteen months. 47 C.F.R. § 64.1200(f)(5). The phrase "with or without an exchange of consideration" eliminates a payment requirement, but it does not eliminate the separate requirements of a voluntary two-way communication and a purchase or transaction with the *caller* (i.e., Defendant).

The SAC does not establish those requirements as to Defendant. It alleges that Plaintiff purchased a vehicle from a dealership and that the dealership placed temporary coverage with NGIC through a program Defendant administered. SAC ¶ 20. It further alleges that Defendant unilaterally acquired Plaintiff's information from the dealership and/or enrollment records—not through a communication from Plaintiff. *Id*. ¶ 21. And it specifically alleges that Plaintiff did not purchase goods or services from Defendant, apply to Defendant for insurance, request a quote from Defendant, visit Defendant's website, contact Defendant, or ask Defendant to provide continuous coverage. *Id*. ¶ 35. In other words, Defendant is a stranger to Plaintiff and no relationship ever existed. Defendant's receipt and maintenance of

customer data may explain how it obtained Plaintiff's number, but unilateral acquisition of a consumer's information is not itself a consumer transaction or communication with the acquirer. *See id*. ¶¶ 18–21, 38.

Defendant also attributes to Plaintiff knowledge that the SAC does not allege. Paragraph 17 of the SAC states that Defendant's program materials represent that, after a dealer uses the program, "the customer is contacted and offered continuous coverage." But the SAC does not allege that Plaintiff received, reviewed, or assented to those materials, or that anyone disclosed Defendant's identity to her when the temporary coverage was placed. Defendant therefore cannot convert its own description of its program into a pleaded fact that Plaintiff voluntarily formed a relationship with Defendant or expected a solicitation from Defendant.

The FCC's interpretation confirms that the EBR inquiry is entity-specific. The Commission has emphasized that the definition requires a voluntary two-way communication and that a seller or telemarketer invoking the EBR must be able to demonstrate the relationship by clear and convincing evidence. *Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14,014, ¶ 83 (2003) ("Any seller or telemarketer using the EBR as the basis for a telemarketing call must be able to demonstrate, with clear and convincing evidence, that they have an EBR with the called party."). The current rule likewise provides that an EBR with one business entity does not automatically extend even to an affiliate. 47 C.F.R. § 64.1200(f)(5)(ii).

The same FCC Order rejects the broader theory Defendant advances here. A contractual relationship between a seller and a third-party telemarketer or independent dealer does not, by itself, transfer the dealer's EBR to the seller; the seller must rely on its own EBR with the consumer. 18 FCC Rcd. 14,014, ¶ 86 ("However, we disagree with Nextel that a consumer's EBR with a third party

telemarketer, including a retail store or independent dealer, extends to a seller simply because the seller has a contractual relationship with that telemarketer. The seller would only be entitled to call a consumer under the EBR exemption based on its own EBR with a consumer.”).

Although a purchase of a seller’s own product through a dealer may create an EBR with that seller, the SAC identifies NGIC as the insurer and Defendant as NGIC’s program administrator. SAC ¶¶16, 20. It does not allege that Plaintiff purchased anything from Defendant or otherwise transacted with Defendant. At minimum, whether the dealership’s placement of NGIC coverage also created a separate consumer relationship with Defendant cannot be resolved against Plaintiff from the face of the SAC.

The pleaded facts support the opposite inference: Plaintiff dealt with the dealership; the coverage was purchased by the dealership and placed by NGIC; Defendant obtained Plaintiff’s information indirectly; and Plaintiff had no direct dealings with Defendant. Because the SAC does not conclusively establish the required voluntary two-way communication or a purchase or transaction with Defendant, the EBR defense cannot support dismissal under Rule 12(b)(6).

## III. <u>CONCLUSION</u>

**WHEREFORE** Plaintiff respectfully requests and order denying Defendant’s Motion to Dismiss Plaintiff’s Second Amended Complaint, and for such other relief deemed appropriate.

Dated: August 12, 2026

Respectfully submitted,

**HIRALDO P.A.**

*/s/ Manuel S. Hiraldo*

Manuel S. Hiraldo, Esq.
Pro hac vice
Florida Bar No. 030380
246 Shore Court
Lauderdale-by-the-Sea, Florida 33308
Email: mhiraldo@hiraldolaw.com
Telephone: 954.400.4713

**EDELSBERG LAW, P.A.**
Scott Edelsberg, Esq. (CA Bar No. 330990)
1925 Century Park E #1700
Los Angeles, CA 90067
Telephone: 305-975-3320
scott@edelsberglaw.com
*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 12, 2026, I filed the foregoing document with the Clerk of the Court using the CM/ECF system, which automatically serves all counsel of record.

*/s/ Manuel S. Hiraldo*
Manuel S. Hiraldo, Esq.
*Counsel for Plaintiff*